## DODSON v. PECK.
### No. 4153.

Court of Civil Appeals of Texas. Amarillo.
Oct. 8, 1934.

Rehearing Denied Nov. 5, 1934.

J. R. Wilson, of Wichita Falls, and J. A. Lantz, of Eastland, for plaintiff in error.

Vickers, Campbell & Evans, of Lubbock, for defendant in error.

JACKSON, Justice.

This is an appeal by S. S. Dodson from a judgment obtained against him by William M. Peck on a certain note and for the foreclosure of a lien on section 118, block 3, in Armstrong county.

Dodson pleaded usury as a defense, alleging the amount of money he had received as a loan and the sum of the payments he had made thereon. He claimed such payments should be credited on the principal and, if

so credited, the debt would be satisfied. He offered in the alternative to pay, after such credits were allowed, any amount that the court should determine was unpaid.

The case was submitted to the court without the intervention of a jury and the judgment complained of rendered.

There is no statement of facts in the record, but the findings by the court material to this appeal are, in substance, as follows: On March 24, 1917, S. S. Dodson, the appellant, borrowed the sum of $3,000, for which he executed and delivered to William M. Peck, the appellee, a principal note for $3,300, due five years after date and five interest coupon notes each for the sum of $198, due one each year for five consecutive years. Contemporaneously with the execution of the notes, to secure the payment thereof appellant executed to L. T. Martin, as trustee, a deed of trust for the use and benefit of appellee and his assigns. In the negotiation of the loan, L. T. Martin acted as agent for appellee and on his behalf negotiated the loan. Appellee acted as the principal and lender in the transaction and appellant was advised by Martin that appellee was such principal. Appellant actually received but $3,000, but $300 was added to the principal note for a commission paid by appellant to L. T. Martin to induce him to negotiate the loan. The appellee knew that such commission was paid and received a part thereof.

On March 24, 1922, the lien and the principal note for $3,300 were renewed and extended for five years with interest at the rate of 7 per cent. per annum evidenced by five interest notes, each for the sum of $231, payable one each year for five consecutive years. In the last-named transaction, as a part of the consideration for such extension, the appellant, with the knowledge of appellee, paid a commission of $330 to L. T. Martin for such agent or for him and appellee.

On March 24, 1927, the appellant had paid all of the interest notes except the last, which was in default. On that date, for the purpose of renewing and extending the due date of the loan, the appellant executed and delivered to appellee one principal note for the sum of $4,400, due ten years after date, and ten interest coupon notes, each for the sum of $264, due one each year for ten consecutive years, secured by a new deed of trust on the same property. The $4,400 consisted of the item of $3,300 evidenced by the first principal note, $624 advanced by appellee to secure a patent on the land, and $76 for expenses incurred in securing such patent,

and a bonus of $400 as a commission paid to appellee for the renewal and extension of such indebtedness and the advancement of the money and expense to secure the patent.

In this transaction appellee acted as the agent of appellant and it was agreed that the $400 was to be paid to and received by appellee. In connection with the above extension and renewal, the appellant executed to appellee one note for the sum of $301.75, one interest coupon note for $24.14 each due one year after date, in consideration of the renewal and extension of the $231 interest coupon note which was in default, and the sum of $70.75 claimed by appellee for expenses incurred in the renewal of March 24, 1927. On August 18, 1928, the appellant executed and delivered to appellee renewal notes for the balance of the $301.75 note and some unpaid interest. On March 24, 1930, the last-mentioned notes were renewed for certain items unnecessary to set out in detail.

All of the principal notes, in addition to the interest therein specified and the renewals thereof, as well as the coupon notes, stipulate for interest from maturity at the rate of 10 per cent. per annum. Each of the deeds of trust given to secure the payment of the indebtedness and the renewals thereof provide that in the event default should be made in the payment of any principal note or any interest note according to the face, tenor, and effect thereof, the whole amount of said indebtedness remaining unpaid should immediately mature and become payable at the option of the holder and the trustee should proceed to sell the real estate to satisfy such indebtedness.

The appellee had for about forty years been engaged as a land agent or broker, with headquarters in Concordia, Kan., and negotiated loans with borrowers in Kansas, Oklahoma, and Texas, for lenders living in Vermont. Appellee secured compensation for his services from the borrowers, took all notes and security in his own name, but did not loan his own funds except in instances where he took up delinquent interest for borrowers. The lenders, appellee's clients, were charged nothing for his services and they knew he was engaged in the loan business and procured his compensation from persons who borrowed through his agency. The appellee inspected and appraised the property offered for security, either in person or by agent, submitted to the lenders reports as to the value thereof, and attended to the collection of the notes given by the borrowers at his own expense. One of the

lenders was his sister and she knew he obtained his commission from the borrowers. The original $3,300 note was transferred by appellee to his sister, together with each renewal thereof, which she owned until her death, after which appellee purchased and had transferred to him by her legal representatives the $4,400 note, interest coupons, and the lien securing the payment thereof.

These findings disclose that the original note for $3,300, dated March 24, 1917, and the interest coupons in connection therewith, were made to appellee, who was named as beneficiary in the deed of trust given to secure their payment. He acted as principal and lender in the transaction and was represented as such by his agent, L. T. Martin. Appellee attended to the collections on the note, made each of the renewals and extensions thereof in his own name, never informed appellant that the indebtedness had been transferred, neither by word nor act was the agency now claimed disclosed, and after the death of his sister, for whom he claims to have been acting as agent, he repurchased the note and lien.

■ For the purpose of determining under this record appellant's rights, we shall consider appellee as principal and L. T. Martin as his agent, since:

"The rule is settled that an agent who does not disclose the fact of his agency and contracts as the ostensible principal, is liable in the same manner and to the same extent as though he were the real principal in interest and, of course, he is liable also if he represents himself to be the principal in the transaction. * * * Knowledge of the real position of affairs acquired after a cause of action has accrued cannot affect the right to recover from the agent personally and even the taking of a note signed by the principal, as well as by the agent, will not necessarily exonerate the latter from responsibility on the original contract." 2 Tex. Jur. 583, § 172, and authorities cited.

"In our opinion, this testimony is sufficient to support a finding of the court that the appellees had no notice or knowledge of the transfer of any part of the indebtedness from the Commerce Farm Credit Company, the appellant in this case, to the Commerce Trust Company. If this conclusion is correct, the appellant is responsible to appellees for the usurious interest received by it for the reason that it acted in its own name and failed to disclose its agency or the principal for which it was acting." Commerce Farm Cred-

it Co. v. Ferguson et ux. (Tex. Civ. App.) 47 S.W.(2d) 879, 882, and authorities there cited.

See, also, Commerce Trust Co. et al. v. Best et al. (Tex. Civ. App.) 54 S.W.(2d) 1037.

"In an action to recover back usurious interest paid to a defendant on a note taken in his own name, he cannot set up as a defense that the money loaned belonged to another for whom he was acting as agent." 66 C. J. 289, § 271.

Is the appellee responsible for the usury, if the contract was usurious?

■ He knew that appellant received but $3,000 on the principal note given to him by appellant for $3,300. That $300 thereof was paid to L. T. Martin, his agent, as a commission, part of which appellee received. In the renewal and extension on March 24, 1922, appellant paid, with appellee's knowledge, a commission of $330 to L. T. Martin for such agent, or for him and appellee. As a consideration to secure the renewal and extension of March 24, 1927, the appellant paid to appellee a bonus of $400. The court finds that in this transaction appellee acted as agent for appellant, but the note was made to appellee and the deed of trust made for his benefit and the principal for whom he was acting is not disclosed. In this connection we must keep in mind that L. T. Martin was agent for the appellee, the lender, and not agent for the appellant, the borrower, because a commission paid to the agent or broker of a borrower will not render the loan usurious if the lender has no interest in such commission. 21 A. L. R. 830, annotations.

However, "it is generally held that the exaction of a commission from the borrower by the lender's agent will render the transaction usurious, if such exaction is known to, and authorized or ratified by, the lender." 21 A. L. R. 850, annotation.

"It is a general principle that whenever an agent exacts from the debtor a bonus or commission, for or in connection with the making of a contract of loan or forbearance, and his act in so doing is to be deemed, under the rules applicable to the relation of principal and agent, to be expressly or impliedly authorized or ratified by the creditor, the transaction is usurious, unless the amount of such bonus or commission, when added to the interest, if any, contracted to be paid does not exceed the maximum lawful interest on the principal sum; but that where responsibility for such an exaction cannot be so charged to the creditor, the contract is not affected with usury, however oppressive may be the conduct of the agent,

Where a creditor in fact makes a usurious exaction from his debtor through a third person, it is immaterial whether such third person is nominally the agent of the creditor, or of the debtor, or of both. The application of these principles in particular circumstances is considered in following sections of this treatise." 66 C. J. 222, § 150.

■ If the creditor shares with the agent such bonus or commission, or receives a part thereof, it is a ratification of the acts of his agent. 66 C. J. 223, § 152.

"Actual knowledge on the part of a creditor, accepting the benefit of a contract of loan or forbearance made by his agent, that such agent is exacting or has exacted a bonus or commission from the debtor charges the creditor with assent thereto and renders the contract usurious if the lawful rate of interest is thereby exceeded, whether or not the creditor receives any part of such bonus or commission." 66 C. J. 223, § 153.

"In a number of jurisdictions it is held that where a lender authorizes an agent to make a loan or loans, without providing for compensation for his services in so doing, or under such other circumstances that he must be presumed to know that the agent is obtaining, or in the ordinary course of business will obtain, compensation from the borrowers, he is chargeable with notice of the agent's exactions, and deemed impliedly to authorize them, within the rule that the exaction of a commission or bonus by an agent, with his principal's authority, constitutes usury if the lawful rate of interest is thereby exceeded; and this principle is applied particularly where a close relationship exists between lender and agent, such as that of parent and child, brothers, or husband and wife." 66 C. J. 223, § 154.

■ The commission exacted on the original $3,000 loan, added to the interest stipulated for in the note for $3,300 and the deed of trust which provides that if the appellant defaults in making any annual payment when due, authorized appellee at his option to enforce the collection from appellant of a sum greatly in excess of the legal rate of interest, hence the loan was usurious from its inception.

In Shropshire et ux. v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 283, 39 S.W.(2d) 11, 84 A. L. R. 1269, Judge Greenwood for the Supreme Court says:

"From the above statement of the case it appears that the single question for our determination is whether a contract is usurious under the Constitution and statutes in Texas, which provides for the payment of a higher rate of interest than 10 per cent. per annum, at the creditor's option, on no other condition than the default of the debtor in discharging annual installments of interest. Regardless of results in the event the debtor should discharge every promised annual installment of interest at or before maturity, it is too plain for dispute that this contract, on the face of the writings, entitles the creditor, at its option, on failure of the debtor to discharge certain annual installments of interest, to enforce collection from the debtor of a sum amounting to more than the $4,200 loaned with interest thereon for the term of the loan at the rate of 10 per cent. per annum. This results from the stipulations of the writings whereby such failure, at the creditor's election, shortens the term of the loan and increases the amount of the debtor's obligation."

In the same opinion the court approves the statement made in 27 R. C. L., on pages 223 and 224, that:

■ "Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, by the terms of the transaction, and the means used to effect the loan, he may by its enforcement be enabled to get more than the legal rate."

This rule of law has been followed consistently by all the courts of this state since its announcement.

Each renewal and extension of the loan contains the same vice, increased and aggravated by each additional commission and bonus paid.

The original and each subsequent transaction constituted an usurious contract. Appellee was a party in each instance, authorized and approved the acts of, and accepted part of the commissions charged by his agent, and received all of the $400 bonus paid for the last extension agreement. The principal note for $4,400 sued on was dated March 24, 1927, and was due ten years after date. Appellee exercised his option and on October 18, 1932, sought in his amended petition a judgment for his debt and a foreclosure of the lien on appellant's land, and was granted the relief sought.

■ These facts, together with the manner in which appellee prosecuted his loan busi-

ness, are, in our opinion, entirely sufficient to show that his purpose was to charge more than the legal rate of interest and certainly the transactions and the means used to effect the loan enabled him to enforce the collection of a sum in excess of the legal rate and he must be charged with the consequences of his acts and contracts. Commerce Trust Co. et al. v. Best, supra; Joy v. Provident Loan Soc. (Tex. Civ. App.) 37 S.W.(2d) 254.

The judgment is reversed and the cause remanded.