NO. 12-00-00288-CV



IN THE COURT OF APPEALS


TWELFTH COURT OF APPEALS DISTRICT


TYLER, TEXAS


 DUNCAN BURCH AND DEJA VU, § APPEAL FROM THE

INC. D/B/A ROCKING D RANCH,

APPELLANTS


V. § COUNTY COURT OF



D. L. HANCOCK,

APPELLEE § RAINS COUNTY, TEXAS





 Duncan Burch ("Burch") and Deja Vu, Inc. ("Deja Vu") d/b/a Rocking D Ranch (collectively
"Appellants") appeal the trial court's judgment in favor of Appellee, D. L. Hancock ("Hancock"). 
In five issues, Appellants contend that the evidence was both legally and factually insufficient to
support certain findings made by the trial court and the judgment as a whole. We affirm.


Background

 Deja Vu owns and operates a ranch in Emory, Rains County, Texas under the assumed name
of Rocking D Ranch (the "ranch"). The ranch consists of approximately 3,400 acres of land,
approximately 1,800 acres of which is owned by Deja Vu and the remaining 1,600 non-contiguous
acres, which is owned individually by Burch, the president of Deja Vu. Burch leases the land he
owns to Deja Vu. On or about August 1, 1998, Hancock met with Burch about grinding stumps at
the ranch. Approximately six acres of land containing timber had been cleared and the stumps had
to be removed so that the land could be planted for cattle grazing. The record reflects that Hancock
and Burch met alone and agreed that Hancock would grind stumps on the ranch and would be paid
five dollars for each stump ground, regardless of size. Hancock testified that, at the time he entered
into the agreement, he knew nothing about Deja Vu and thought that Burch owned the ranch. The
evidence is undisputed that, during this meeting, Burch never stated to Hancock that he was acting
as agent of Rocking D Ranch, Deja Vu, or anyone else.

 Initially, a system was devised whereby utility flags were placed by each stump to be ground. 
As Hancock ground the stump, he would pick up the flag and turn it in to the ranch foreman, Greg
Paige ("Paige"). However, after two weeks, the flagging system was abandoned, and instead, Paige
simply showed Hancock generally the area in which he could grind stumps. Hancock testified that
he kept track of the number of stumps ground by making a mark on his stump-grinding machine each
time he finished grinding a stump. Although other ranch employees were present in the general
vicinity as Hancock ground stumps, his work was not closely supervised.

 Hancock was instructed by Paige to make his invoices out to the ranch. Hancock prepared
invoices for the first two weeks of work as instructed and submitted them to the ranch. Hancock
received payment on the first two invoices by check from Deja Vu. Hancock continued to grind
stumps. 

 Hancock submitted a third invoice to the ranch in the amount of $2,495.00. (1) Soon thereafter,
the record reflects that Burch became suspicious that Hancock had not ground as many stumps as
he claimed in the invoices submitted. There is evidence that Burch sent a ranch employee to closely
monitor Hancock's future stump-grinding activities. There is further evidence that when Hancock
was advised of such supervisory arrangements, he walked off the job. However, according to
Hancock, Burch, who believed that it was simply not possible for a man to grind one hundred stumps
in a day, accused Hancock of lying about the number of stumps he claimed to have ground and told
Hancock to get off his property. At the suggestion of Jim Burch, Burch's father and ranch employee,
Hancock returned to the ranch to discuss payment arrangements with Burch. However, the record
reflects that Burch ignored Hancock, and, having grown weary of waiting, Hancock left. On
September 9, 1998, Hancock sent Burch a letter by certified mail demanding payment.

 The record reflects that Burch made a visual inspection and count of the number of stumps
ground shortly following Hancock's departure, and that Burch counted significantly fewer stumps
ground than claimed by Hancock on the invoices. Approximately three months later, during which
time the evidence reflects that the land in question was subjected to flooding, plowing and cattle
grazing, Burch paid two individuals, Wayne Luckett ("Luckett") and Gordy Nix ("Nix"), to
independently determine the number of stumps ground using, in addition to visual surveillance, a
metal probe. Both Luckett and Nix testified that they counted fewer stumps ground than claimed
by Hancock, but admitted that probing for ground stumps, which are not necessarily visible above
the surface, is not an exact science.


Standard of Review

 In reviewing a no evidence point, we must consider only the evidence and inferences that
tend to support the verdict, disregarding all contrary evidence and inferences. See Wal-Mart Stores,
Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). We may only sustain a "no evidence" point
when the record discloses one of the following: (1) a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or evidence from giving weight to the only evidence offered
to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of
evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. See Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). It is not within our power to
second guess the fact-finder unless only one inference can be drawn from the evidence. See Havner
v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 461 (Tex. 1992). If there is more than a scintilla of
evidence to support the finding, the evidence is legally sufficient. See Browning-Ferris, Inc. v.
Reyna, 865 S.W.2d 925, 928 (Tex. 1993). 

 On the other hand, when evaluating a factual sufficiency challenge, we will consider and
weigh all of the evidence in the case, both evidence supporting the verdict and evidence which tends
to contradict the facts upon which the fact-finder based its verdict. See In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951). We may not substitute our conclusions for those of the fact-finder and
will reverse only if we conclude that the verdict is so against the great weight and preponderance of
the evidence as to be manifestly unjust. Id.

Individual Liability of Agent on Contract

 In their first three issues, Appellants contend that the trial court erred in finding Burch
individually liable on the contract. We disagree. Regarding the liability on corporate contracts,
officers of corporations are in the same position as agents of private individuals. See A to Z Rental
Ctr. v. Burris, 714 S.W.2d 433, 435 (Tex. App.-Austin 1986, writ ref'd. n.r.e.). In order for an
agent to avoid personal liability on a contract, he has the duty to disclose not only that he is acting
in a representative capacity but also the identity of his principal. Id. The party with whom the agent
deals has no duty to discover the principal. Id. The inference that the agent is a party to the contract
exists until the agent gives such complete information concerning the principal's identity that the
principal can be readily distinguished. Id. If the other party has no reasonable means of ascertaining
the principal, the inference prevails unless the parties have agreed otherwise. Id.; see also
Restatement (Second) of Agency § 321, cmt. a. (1958). In other words, disclosure of an agency
is incomplete for the purpose of relieving an agent from personal liability unless it included the name
of the principal. See Burris, 714 S.W.2d at 435 (emphasis in original). Furthermore, the use of a
tradename is generally an insufficient disclosure of the principal's identity and the fact of agency so
as to protect the agent against personal liability. Id., citing Carter v. Wal, 469 S.W.2d 462, 471
(Tex. Civ. App-Corpus Christi 1971, writ ref'd. n.r.e.); Lachman v. Houston Chronicle Publ'g Co.,
375 S.W.2d 783, 784-85 (Tex. Civ. App.-Austin 1964, writ ref'd. n.r.e.). An agent cannot claim
immunity from personal liability merely because the party with whom the agent dealt had a means
of discovering the agent's representative capacity. See Burris, 714 S.W.2d at 435, citing Anderson
v. Smith, 398 S.W.2d 635, 637 (Tex. Civ. App.-Dallas 1965, no writ). The test of disclosure is the
other party's knowledge, or reasonable grounds to know of the principal's existence or identity,
irrespective of the source from which the other party obtains it. See Burris, 714 S.W.2d at 435,
citing Johnson v. Armstrong, 18 S.W. 594, 595 (Tex. 1892). However, in making this
determination, we must look at the time the contract was entered into. See Lacquement v. Handy,
876 S.W.2d 932, 940 (Tex. App.-Fort Worth 1994, no writ). Knowledge of the real position of
affairs acquired after a cause of action has accrued cannot affect the right to recover from the agent
personally on a contract. See Dodson v. Peck, 75 S.W.2d 461, 463 (Tex. Civ. App.-Amarillo 1934,
writ dism'd. w.o.j.).

 In the case at hand, the record reflects that Hancock and Burch met alone and agreed that
Hancock would grind stumps on the ranch and would be paid five dollars for each stump ground,
regardless of size. Hancock testified that, at the time he entered into the agreement, he knew nothing
about Deja Vu and thought that Burch owned the ranch. The evidence is undisputed that, during this
meeting, Burch never stated to Hancock that he was acting as agent of Rocking D Ranch, Deja Vu,
or anyone else. However, Appellants, relying heavily on Armstrong, contend that other
circumstances existed sufficient to put Hancock on notice that he was dealing with Burch in his
capacity as officer of Deja Vu. (2)

 In Armstrong, architects hired to prepare plans for buildings for a college attempted to hold
the president of the college, who had hired them, personally liable on the contract. See Armstrong,
18 S.W. at 594-95. The court concluded that, from the totality of the circumstances, the architects
should have known that the buildings were for the college and not for the president who hired them. 
Id. at 595. The Armstrong opinion implies that the architects did in fact know that they were dealing
with the college. See Posey v. Broughton Farm Co., 997 S.W.2d 829, 832 (Tex. App.-Eastland
1999, pet. denied). The facts in Armstrong are not analogous to the instant case. It is undisputed
that only Burch and Hancock were present during the negotiations of the stump-grinding agreement. 
Hancock claims no actual knowledge that Burch was acting on behalf of Deja Vu. 

 Hancock filed suit on a sworn account against Burch. At trial, Burch offered no testimony
that he had made any disclosures to Hancock that he was acting as officer of Deja Vu. The
surrounding circumstances cited by Appellants, which they contend should have put Hancock on
notice that he was contracting with a corporation, are primarily based on the assumption that in a
small community, such as Emory, every member of the community surely knows the legal status of
the large ranches and other businesses in that community. We disagree with Appellants' logic. It
is not inconceivable that a 3,400 acre ranch, with extensive operations could be owned by an
individual. Indeed, 1,600 acres of Rocking D Ranch was owned by Burch individually. Further, it
is not beyond the realm of possibility that a person living in a small community does not know, by
virtue of his status as a member of that small community, that a local ranch operating under an
assumed name that does not expressly indicate corporate status is owned by a corporation in Dallas. 
Finally, we do not conclude that it would be unreasonable for one person to be friends with another,
but for neither person to know the legal status of the other person's employer. As for the remaining
circumstances cited by Appellants, even assuming they were sufficient to put Hancock on notice that
he had, in fact, contracted with Burch in his capacity as officer of a corporation, such facts do not
relate to the time the contract was entered into, and thus, are not proper for our consideration. See
Lacquement, 876 S.W.2d at 940; see also Dodson v. Peck, 75 S.W.2d at 463; see, e.g., Anderson,
398 S.W.2d at 637 (fact that a party received checks made by the principal did not relieve the agent
from liability because disclosure needed to be made at the formation of the contract and noting that
the mere receipt of checks or other documents bearing the principal's identity might not be sufficient
to disclose the identity to the plaintiff).

 Although Appellants briefly acknowledge the authority on agency as set forth above,
Appellants ask that we disregard such authority and consider their contention that:


 Additional[ly], public policy concerns in this area exist. The law in Texas in the new millennium cannot allow
people dealing with large businesses with assumed names, multiple employees, etc. to feign ignorance of
corporate existence. If everyone who has a corporation must, from the top officer down, always remind those
they are dealing with that "you are ordering your hamburger and french fries from the McDonalds Corporation
or from Joe's Hamburgers[,] Inc." or "your dry cleaning will be done by XYZ[,] Inc. d.b.a. Main Cleaners,"
to guarantee that if something goes wrong with the transaction personal liability doesn't exist, business and
commerce will be disrupted. Any principle of general agency to the contrary is far outdated and the law "must
be consistent with the conditions and circumstances of our people.



We do not agree with the supposition that large businesses with assumed names, multiple employees
and the like invariably adopt the corporate form. Texas has a variety of legal protections for entities,
which vary from the traditional corporate model, and which, like the corporate model, are available
for entities both large and small. Furthermore, agency law is alive and well in Texas and is an
important part of our jurisprudence. Appellants' contention that disclosure of the corporate form has
become impractical and antiquated in the modern age is not supported by relevant authority and is
insufficient to discharge Appellants' burden.

 Having reviewed the record, we conclude that there was legally sufficient evidence that
Hancock lacked actual knowledge that Burch was contracting as a representative of Deja Vu. 
Further, given the fact that it is undisputed that only Burch and Hancock were present during the
negotiations of the stump-grinding agreement, and given the fact that Burch offered no testimony
indicating that he represented to Hancock that he was acting on behalf of Deja Vu, we conclude that
the record does not uncover any great weight of evidence contradicting the finding made by the trial
court in this case, nor does the verdict otherwise shock the conscience of this Court. Appellants'
issues one, two and three are overruled.

 In their fourth and fifth issues, Appellants contend that the trial court's findings related to the
number of stumps ground by Hancock and the amount of money owed to Hancock on the account
are not supported by legally and factually sufficient evidence. The elements necessary to prove a suit
on sworn account are: (1) a sale and delivery of goods or services, (2) the charges on the account
are just, i.e., the prices are charged in accordance with an agreement or, in the absence of an
agreement, are the usual, customary and reasonable prices for that good or service; and, (3) the
amount remains unpaid. See Andrews v. East Tex. Med. Ctr.-Athens, 885 S.W.2d 264, 266 (Tex.
App.-Tyler 1994, no writ). At trial, Hancock testified that he performed a service for Burch in
accordance with the agreement between the two parties. Hancock testified that he ground a total of
1,165 stumps at a rate of five dollars per stump. Hancock further testified that the rate of five dollars
per stump was the price agreed upon by the parties and was very reasonable. Finally, Hancock
testified that he had not been paid on the last invoice that he submitted to Burch in the amount of
$2,405.00. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude
that there was some evidence amounting to more than a scintilla to support the trial court's finding
that Hancock provided stump grinding services for Burch at an agreed rate of five dollars per stump
and that Hancock had not been paid for a portion of the services he provided.

 In its factual sufficiency challenge, Appellants point to the testimony of Burch, Luckett and
Nix, who independently surveyed the land on which Hancock had been grinding stumps to determine
how many stumps had been ground. Appellants contend that the testimony of Burch, Luckett and
Nix so greatly outweighs the testimony offered by Hancock as to how many stumps were ground,
that such testimony renders Hancock's testimony and any other evidence on which the trial court
based its finding factually insufficient. Appellants further contend that one of the invoices submitted
as an exhibit by Hancock was tampered with, which Appellants argue weighs heavily against
Hancock's credibility as a witness. 

 In making its findings, the fact-finder weighs the evidence, assesses the credibility of
witnesses, and resolves conflicts and inconsistencies. See McGalliard v. Kuhlmann, 722 S.W.2d
694, 697 (Tex.1986). The fact-finder is the judge of the facts proved and of the reasonable
inferences to be drawn therefrom. See Lockley v. Page, 180 S.W.2d 616, 618 (Tex. 1944). We are
mindful that this Court is not a fact-finder, and we cannot substitute our judgment for that of the trial
court, even if a different finding could be reached on the evidence. See Service Lloyds Ins. Co. v.
Martin, 855 S.W.2d 816, 819 (Tex. App.-Dallas, no writ). We reiterate that we will reverse only
if we conclude that the verdict is so against the great weight and preponderance of the evidence as
to be manifestly unjust. See In re King's Estate, 244 S.W.2d at 661.

 In the instant case, four witnesses testified as to how many stumps had been ground and the
method used to determine such an amount. Hancock, who was the only of the witnesses present
when the stumps were being ground, testified that he marked down each stump on his stump-grinding machine after he ground it. Burch testified that he visually surveyed the land on which
Hancock had worked and counted the stumps he determined had been ground. Luckett and Nix, who
were employed by Burch to count the number of stumps ground, surveyed the land both visually and
with the use of a metal surveying probe. All testified that a much lower number of stumps were
ground than claimed by Hancock on his invoice. However, both Luckett and Nix admitted that their
method of counting stumps was not an exact science. The record further reflects that a visual survey,
as utilized by Burch, would fail to discover stumps ground below the surface. Moreover, the record
reflects that Luckett and Nix did not make their surveys until months after Hancock had stopped
grinding stumps, during which time the land had flooded at least twice, been plowed and had been
grazed by cattle. Further still, the inconsistencies in invoices introduced as exhibits is not conclusive
evidence that Hancock was not a credible witness. At trial, Hancock testified that the invoice for
$2,495.00 was simply a mistake, which he had attempted to correct by submitting a subsequent
invoice to Burch in the amount of $2,405. The credibility of a witness, such as Hancock, is not a
determination we may make. See Martin, 855 S.W.2d at 819. 

 In conclusion, our review of the record as a whole has not uncovered any great weight of
evidence to allow us to conclude that the trial court's finding was manifestly unjust, nor does the trial
court's finding otherwise shock the conscience of this Court. Therefore, we hold that the evidence
was factually sufficient to support the trial court's findings. Appellants fourth and fifth issues are
overruled.

 Accordingly, the judgment of the trial court is affirmed.





 SAM GRIFFITH 

 Justice



Opinion delivered August 1, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.














(PUBLISH)
1. The record reflects that this amount, which Hancock testified was a mistake, was corrected by a
subsequent invoice in the amount of $2,405.00.
2. The circumstances Appellants specify are: (1) the size and overall scope of the ranch and operations; (2)
the number of employees and amount of equipment on the property; (3) the knowledge of reputation in the small
community in which the parties live in Emory, Texas; (4) the knowledge of the corporate trade name of Rocking D
Ranch; (5) the fact that the foreman of the ranch..., who was employed by Deja Vu..., and was good friends with
Hancock and his brother, was aware of the corporation, and instructed Hancock to invoice the ranch and send the
invoices to the corporate office in Dallas, Texas, all of which Hancock did; (6) the checks to Hancock were issued
from Deja Vu, Inc.; (7) the amount sued upon in this litigation was done at a time when it was actually known to
Hancock that Deja Vu, Inc. owned the ranch and knowing this fact, he continued to do the work; and (8) Hancock
initially sued Jim Burch.