Ms. R.A. LACQUEMENT, Appellant,

v.

Michael HANDY and Betty
Jean Brewer, Appellees.

No. 2–93–034–CV.

Court of Appeals of Texas,
Fort Worth.

April 13, 1994.

Publication Ordered May 24, 1994.

Rehearing Denied May 24, 1994.

John Hill Cayce, Jr., Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellant.

Michael Handy, Toby P. Tyler, Jr., Chappell & Handy, P.C., Fort Worth, for appellees.

Before HILL, C.J., and WEAVER and DAY, JJ.

## OPINION

WEAVER, Justice.

This summary judgment appeal arises from a suit brought by appellant, Ms. R.A. Lacquement, against appellees, Michael Handy ("Handy") and Betty Jean Brewer ("Brewer"), seeking specific performance of a

settlement contract. Mrs. Gladys Smith was injured in an accident and she retained Handy, an attorney, to represent her in any claims she had arising from the accident. Mrs. Smith subsequently died and Handy was then retained by Brewer, Mrs. Smith's daughter, to represent her in any claims she had arising from Mrs. Smith's injuries and death. According to Ms. Lacquement, her insurance company timely accepted an offer from Handy to settle the claim arising from the accident. Appellees take the position the offer was a time demand that was not timely accepted within its terms.

Ms. Lacquement filed her lawsuit against Handy on November 13, 1991, alleging that he had acted on behalf of one or more undisclosed principals. She later amended her petition to include Brewer in the suit. As a result of the lawsuit, Handy and Brewer filed a Motion for Summary Judgment urging that the offer of settlement was a "time demand" which was not timely accepted. The motion further asserted that Handy had disclosed the identity of his principal and was not a proper party to the lawsuit. The trial court granted the motion in part and denied it in part. Although the trial court found the offer of settlement was not a time demand, the trial court did find that it had not been accepted within its terms and conditions before it was withdrawn. Additionally, the trial court found that Handy was not acting on behalf of an undisclosed principal. Because a fact issue exists as to whether the settlement offer was properly accepted, and because a fact issue exists as to whether Handy properly disclosed his principal, we reverse the judgment of the trial court and remand this cause for a trial on the merits.

This appeal stems from an auto accident in early April of 1991 between Ms. Lacquement and another vehicle. Mrs. Gladys Smith, a passenger in the other car, was injured in the accident. She retained Handy for the purpose of representing her in a claim for personal injuries arising out of the accident.

Mrs. Smith subsequently died in June of 1991, allegedly as a result of the injuries received in the accident. Handy was then retained by Brewer, Mrs. Smith's only daughter.

Ms. Lacquement was insured by State Farm Mutual Automobile Insurance Company ("State Farm"). On August 14, 1991, Handy sent a written settlement offer to Chris Bartee, the representative assigned to the Smith claim. The letter reads as follows:

> RE:  Our Client: Gladys Smith
>       Date of Loss: 4/2/91
>       Claim No.: 43–7110–053
>       Your Insured: Julia Davis
>       Lacquement
>       Policy No.: 144–7423 B04–43M
>       Our File No.: 1430.00

Dear Mr. Bartee:

Please consider this letter an offer to compromise and settle the above-referenced claim for your insured's policy limits. Upon your acceptance, this settlement will be subject to routine approval by the underinsured carrier. You must respond to this offer within ten (10) days of the date of the receipt of this letter. If no response is made, this offer to compromise and settle the claim will be withdrawn and no further settlement will be offered or tendered.

I am enclosing a copy of the Certificate of Death for Gladys Smith and copies of pertinent medical records. As you can see on the Certificate of Death, Gladys Smith died as a result of the accident involving your insured, Julia Davis Lacquement.

Since our first conversation on this matter, you have had ample time to investigate the facts. The medical records clearly indicate that Gladys Smith died as a result of the injuries she sustained in this accident. You have steadfastly refused to provide information on your insured's policy limits and failed to deal fairly to get this matter settlement [sic]. Please verify the policy limits of the above-referenced policy by forwarding to me a copy of the Declaration page.

I am waiting for a response from you in regards to this claim.

Sincerely,

CHAPPELL & HANDY, P.C.
MICHAEL HANDY

It is undisputed that this letter was received by State Farm the next day, August 15, 1991. However, the medical records Handy referred to were not enclosed as he had represented in the letter. On August 22 Bartee called Handy and told him he needed the medical records in order to document the file and in order to settle the claim. Bartee followed up this telephone conversation with a letter to Handy on August 23, 1991. Handy mailed the medical records on the 23rd, but Bartee did not receive them until August 26. Bartee called Handy the next day, August 27, 1991, and Handy's secretary told him that Handy was out of the country on vacation. Bartee allegedly left a message during this call that he had authority to settle the claim for the "policy limits" of $25,000. Bartee claims he told the secretary to have Handy contact him to let Bartee know exactly who Handy was representing so Bartee would know whom to make the check out to and could get the appropriate paperwork done.

On September 9, 1991, Handy wrote a letter to Bartee confirming his receipt of the August 27 telephone message. In this letter, Handy claimed the settlement offer had not been accepted in time, and had not been accepted according to the terms of the settlement letter. Handy informed Bartee that it was his position State Farm had not acted reasonably in failing to settle within the policy limits and had failed to protect its insured, Ms. Lacquement, in accordance with the *Stowers*[1] doctrine. In subsequent correspondence, Handy again mentioned the *Stowers* situation he felt State Farm was facing, and offered to settle the case for $300,000. When State Farm's attempts to get Handy to comply with the original settlement offer

failed, Ms. Lacquement filed suit to enforce the purported settlement contract.

In this appeal, Ms. Lacquement takes the position that the settlement offer was accepted by the August 27 phone call and message left with Handy's secretary. However, appellees contend Bartee simply told the secretary that he had $25,000 to offer to settle the claim, and did not verify that this was the policy limits. Thus, appellees assert that the settlement offer was not accepted during this phone call. Appellees further assert that the August 14 letter was a time demand letter which had to be accepted within ten days from its receipt.

In her sole point of error, Ms. Lacquement contends the trial court erred in granting appellees' Motion for Summary Judgment. Ms. Lacquement first argues this was error because there is a genuine issue of material fact as to whether the settlement offer was accepted within its terms and conditions before it was withdrawn. Ms. Lacquement also contends summary judgment was improper because there is a genuine issue of material fact as to whether Handy had disclosed the identity of his principal before the settlement offer was accepted. Appellees bring a cross-point contending the trial court erred in ruling that the settlement offer did not constitute a time demand. Because of the nature of the issues in this appeal, we will first address appellees' contention that the settlement offer was a time demand.

As appellees have noted in their brief, a time demand offer is one which, by its very terms, expires at a certain time and can no longer be accepted after the expiration of such time. *See Town of Lindsay v. Cooke County Elec. Coop. Ass'n,* 502 S.W.2d 117, 117–18 (Tex.1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). Appellees are also correct that Handy was the master of his own offer and could dictate any terms of acceptance he wanted, including the stipulation of a time of acceptance. *See*

---

1. *G.A. Stowers Furniture Co v. American Indemnity Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved).

*Joiner v. Elrod,* 716 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1986, no writ); *Franklin Life Ins. Co. v. Winney,* 469 S.W.2d 21, 23 (Tex.Civ.App.—San Antonio 1971, writ ref'd n.r.e.). However, when it is difficult to interpret an offer to determine whether it contains a fixed time limit, we must view the offer in light of all the surrounding circumstances. Furthermore, since the offeror has chosen the words used in the offer, in cases of doubt we will adopt the meaning that is more favorable to the offeree. JOSEPH M. PERILLO, CORBIN ON CONTRACTS, § 2.14 (Rev. ed. 1993). *See also Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth,* 578 S.W.2d 109, 115 (Tex.1978) (writing is generally construed more strictly against its author under Texas law).

The relevant portion of the settlement offer at issue in the present case reads as follows:

> You must *respond* to this offer within ten (10) days of the date of the receipt of this letter. If no *response* is made, this offer to compromise and settle the claim *will be withdrawn* and no further settlement will be offered or tendered. [Emphasis added.]

The closing sentence of Handy's settlement offer states: "I am waiting for a *response* from you in regards to this claim." [Emphasis added.] Appellees contend that it is "abundantly clear" that Handy's settlement offer was a time demand letter that was not timely accepted by Ms. Lacquement or State Farm.

■ Appellees rely on several decisions in support of their position that the letter was a time demand letter. However, these cases are distinguishable from the present case in that they each involved language clearly indicating the offer would expire automatically, without any further action required, if not accepted before the expiration of a certain time limit. *See Waterman v. Banks,* 144 U.S. 394, 396–400, 12 S.Ct. 646, 646–47, 36 L.Ed. 479, 481–82 (1892); *Town of Lindsay,* 502 S.W.2d at 117–18; *Washington v. Rosario Min. & Mill. Co.,* 28 Tex.Civ.App. 430, 67 S.W. 459, 461 (Tex.Civ.App.1902, no writ); *Anderson v. Tinsley,* 28 S.W. 121, 122 (Tex. Civ.App.1894, no writ).

In contrast, Handy's settlement offer states that if no "response" is made within ten days, the offer "will be withdrawn." Unlike the above cases, the settlement letter does not clearly indicate, by its own terms, that if the offer is not "accepted" within ten days, it automatically expires, or should be considered to be automatically withdrawn. This is further illustrated by the fact that Handy demonstrated he knew how to communicate a true time demand settlement offer in subsequent correspondence with State Farm. In his letter offering to settle the claim for $300,000, Handy closed by stating: "I will keep this offer open for thirty days whereupon you may consider it to be withdrawn." This settlement offer, unlike the previous offer, clearly indicates that if it is not accepted within thirty days, it is to be considered automatically withdrawn with no further action required by Handy.

Because the language contained in Handy's August 14 settlement offer is unclear as to whether it is a true time demand letter, we must adopt the meaning of the offer which is more favorable to Ms. Lacquement and State Farm. *See* JOSEPH M. PERILLO, *supra,* § 2.14. We must also consider all of the circumstances surrounding the settlement offer, including the fact Handy mailed the medical records, which were originally supposed to be enclosed with the offer, at least eight days after State Farm received the offer, and made no mention of the purported ten-day deadline. *See id.* Having adopted the view of the settlement offer that favors Ms. Lacquement and State Farm, and having considered all the circumstances surrounding the settlement offer, we hold that the trial court did not err in ruling the settlement offer was not a time demand. Appellees' cross-point is overruled.

As noted earlier, even though the trial court held that the settlement offer was not a time demand, the court ruled that the offer had not been accepted according to its terms

before it was withdrawn by Handy. Ms. Lacquement contends a material fact issue exists as to whether the offer was accepted according to its terms.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). The burden of proof is on the movant. All doubts as to the existence of a genuine issue of material fact are resolved against him, and we must view the evidence in the light most favorable to the nonmovant. *Id.*

In determining whether a fact issue exists precluding summary judgment, evidence which favors the nonmovant is taken as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). "Every reasonable inference from the evidence must be indulged in favor of the non-movants and any doubts resolved in their favor." *Id.* Evidence supporting the movant's position will not be considered unless it is uncontradicted. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

To have a binding contract, there must be an offer and an acceptance. Furthermore, "the offer must be accepted in strict compliance with its terms." *Smith v. Renz,* 840 S.W.2d 702, 704 (Tex.App.—Corpus Christi 1992, writ denied). "The parties must have a meeting of the minds, and each must communicate his consent to the terms of the agreement." *Id.*

Appellees contend that to properly accept the settlement offer, Ms. Lacquement and State Farm had to do the following things: (1) agree to pay the policy limit proceeds; (2) agree that the contract would be conditioned on approval by the uninsured/underinsured insurance carrier; and (3) provide a copy of the policy limits declarations page. However, this argument is not supported by the language of the settlement offer.

As a general rule, language in contracts is given its plain, ordinary meaning unless this would defeat the clear intention of the parties. *See Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987). We believe this rule of law applies equally to the language used in the settlement offer in the present case.

The settlement offer expressly states: "Upon your acceptance, this settlement will be subject to routine approval by the underinsured carrier." Thus, the plain language of the settlement offer did not require Ms. Lacquement and State Farm to agree that the contract would be conditioned on approval by the underinsured carrier *before* accepting the offer. Acceptance of the settlement offer was not conditioned on approval by the underinsured carrier. Rather, the plain language of the offer indicated that once Ms. Lacquement and State Farm agreed to settle for the policy limits, the settlement would be "subject to" routine approval of the underinsured carrier.

Appellees also contend that Ms. Lacquement and State Farm had to provide a copy of the policy limits declaration page to properly accept the settlement offer. However, again the language of the offer does not support this contention.

The opening sentence of the settlement offer states: "Please consider this letter an offer to compromise and settle the above-referenced claim for your insured's policy limits." The letter goes on to explain that upon acceptance, the settlement would be subject to approval of the underinsured carrier, and the letter required a response within ten days. In the closing paragraph Handy criticizes Bartee's handling of the case, and in the last sentence of this paragraph Handy writes: "Please verify the policy limits of the above-referenced policy by forwarding to me a copy of the Declaration page." Again, in reading the settlement offer as a whole and giving the language its plain and ordinary meaning, there was no requirement that the declaration page be forwarded to Handy *be-*

*fore* the offer could be accepted. Rather, the offer indicates that once it was accepted, the settlement would be subject to or conditioned on verification of the policy limits. The only thing Ms. Lacquement and State Farm were required to do to properly accept the offer in strict compliance with its terms was to agree to settle for the "policy limits."

Almost one year after Bartee called and left his message with Handy's secretary, she gave an affidavit as to what Bartee allegedly said during the phone conversation. This affidavit reads in pertinent part as follows:

"I am the former legal secretary to MICHAEL HANDY, and was serving in this capacity on August 27, 1991. I have personal knowledge of the facts contained herein and they are true and correct.

"On such date, Mr. Handy was out of town, and did not come into the office. At approximately 9:19 a.m. on August 27, 1991, I received a telephone call from an individual who identified himself as Mr. Chris Bartee with State Farm Insurance Company. [Mr. Bartee] further stated, as follows:

'I know Mr. Handy is not in the office today, but I wanted to leave a message that I had Twenty–Five Thousand Dollars ($25,000.00) in settlement authority to offer him for the purpose of settling the Gladys Smith claim.'

"The person who identified himself as Mr. Bartee made no mention whatsoever of an acceptance of Mr. Handy's offer, or the policy limits of Mrs. Lacquement's policy."

At the time of the telephone call, Handy's secretary made a typewritten notation of the conversation. The entire notation reads as follows:

```
09:19 AM              08/27/91          PAGE 1
TO: MH
FROM: DEBBIE GAMBOA
CHRIS BARTEE W/STATE FARM INS RE/GLADYS SMITH—
HAS AUTHORITY TO SETTLE FOR $25,000—735–0875
```

However, this description of what took place during the telephone conversation is not consistent with Bartee's version of the conversation.

Bartee also gave an affidavit which was part of the summary judgment record. In his affidavit, Bartee stated that during the phone conversation with Handy's secretary, he advised her that he had received authority, as Handy had requested, to pay the "policy limits" of $25,000, and to have Handy call him for the details to finish up the settlement, "as is usual and customary." Bartee described some of the details that needed to be taken care of as finding out from Handy the names to be included in the draft, the people Handy represented who would be receiving the settlement funds and giving a release, obtaining reasonable proof that Handy represented the people entitled to recover under the insurance policy in question, and the execution of a standard release form. Bartee explained that these, as well as other routine matters, are among the usual and customary matters which must be taken care of once the parties agree to settle for the policy limits.

Bartee also provided deposition testimony, portions of which are part of the summary judgment record, concerning the August 27 phone conversation with Handy's secretary. Although he conceded that he did not recall his exact words, in one portion of his deposition Bartee testified that he called Handy's office on August 27, the day after he received the medical records, and left word that he had the "policy limits" available to settle the Gladys Smith claim. In another portion of his deposition, Bartee explained that he told the secretary he had the $25,000 authority, and to have Handy contact Bartee and tell him how the settlement needed to be written out for the closing papers. Bartee further testified that he told the secretary that someone needed to call him and let him know who the settlement needed to be made out to. In another portion of his deposition, Bartee again testified that on the 27th he left word with Handy's secretary to inform Handy he had the "limits" available to settle the claim, and Bartee again testified that he told the secretary to have Handy let him know who the check would be made out to because the only name Bartee had was Gladys Smith, and

he knew the check wouldn't be made out to her.

As noted earlier, the only thing State Farm was required to do to accept Handy's settlement offer in strict compliance with its terms was to agree to settle the case for the policy limits. Having reviewed the evidence in the light most favorable to Ms. Lacquement, and after indulging every reasonable inference in her favor, we believe a material fact issue exists as to whether State Farm accepted the settlement offer in accordance with its terms. As a result, summary judgment with respect to this issue was improper. *See Perez,* 819 S.W.2d at 471.

■ Ms. Lacquement also contends that summary judgment was improper because there is a genuine issue of material fact as to whether Handy had properly disclosed the identity of his principal. In her pleadings, Ms. Lacquement alleged that Handy was an agent representing an undisclosed principal, and thus was a proper party to the lawsuit. This contention is based, at least in part, on the fact that State Farm did not know exactly whom Handy was representing at the time of the August 14 settlement offer.

■ "Unless the parties have agreed otherwise, a person making or purporting to make a contract with another as agent for a *disclosed* principal does not become a party to the contract." *A to Z Rental Center v. Burris,* 714 S.W.2d 433, 435 (Tex.App.—Austin 1986, writ ref'd n.r.e.) (emphasis added). Thus, as a general rule, if an agent wishes to avoid personal liability on a contract, he has a duty to disclose to the third party, not only the fact he is acting in a representative capacity, but also the *identity* of his principal. *See Wynne v. Adcock Pipe and Supply,* 761 S.W.2d 67, 69 (Tex.App.—San Antonio 1988, writ denied). If the principal remains undisclosed, or if it is known a person is acting as an agent but the "identity" of the principal is not disclosed, the agent is considered to be a party to the contract. *Burris,* 714 S.W.2d at 435. "In other words, disclosure of an agency is incomplete for the purpose of relieving

an agent from personal liability unless it includes *the name* of the principal." *Id.* (emphasis in original). *See also Wynne,* 761 S.W.2d at 69 (to avoid liability, agent has duty to disclose not only that he is acting in representative capacity, but also identity of principal).

■ If the evidence concerning disclosure is conflicting, the issue of disclosure is a fact issue that must be decided by the trier of fact. *See Southwestern Bell Media, Inc. v. Trepper,* 784 S.W.2d 68, 72 (Tex.App.—Dallas 1989, no writ). Additionally, "[t]he other party's *actual knowledge* of the principal, not just the other party's suspicion, is the test." *Burris,* 714 S.W.2d at 435 (emphasis in original). *See also Trepper,* 784 S.W.2d at 71.

■ The August 14 settlement offer simply refers to "Our Client: Gladys Smith," and does not mention Brewer. Also, Bartee's conversation with Handy's secretary when he attempted to accept the settlement offer indicates he did not know whom Handy represented. In his deposition, Bartee testified that Handy never told him whom he was representing other than Gladys Smith.

Appellees contend that Ms. Lacquement and State Farm knew that at all pertinent times Handy was representing the Estate of Gladys Smith, whose executor and only heir, according to appellees, is Betty Jean Brewer. However, there is nothing in the record that indicates Handy was representing the Estate of Gladys Smith when the settlement offer was made. The only contention the record supports is the fact Handy represented Brewer, but Bartee was apparently unaware of this. There is also nothing to support appellee's contention that Brewer was the executor and only heir to Mrs. Smith's estate. Furthermore, although Bartee did refer to Mrs. Smith's "estate" in his request for authority, he testified that Handy had never informed him he represented the estate, and that his reference to Mrs. Smith's estate was just a guess or an assumption on his part. Bartee did not have "actual knowledge" of

who Handy's principal was at the time he attempted to accept the August 14 settlement offer.

 Handy did send a letter to State Farm on October 8, 1991, more than one month before Ms. Lacquement's suit was filed against Handy, that identified his client as Betty Jean Brewer, and referred to her as being Mrs. Smith's only daughter. However, the fact Brewer was Mrs. Smith's only daughter does not, by itself, support the contention she was the executor and only heir to Mrs. Smith's estate. Furthermore, when determining whether an agent has properly disclosed his principal, we must look at the time the contract was entered into. *See Trailways, Inc. v. Clark,* 794 S.W.2d 479, 491 (Tex.App.—Corpus Christi 1990, writ denied). In the present case, there is at least a fact issue as to whether Bartee was aware that Handy represented Brewer at the time of the settlement offer.

Based on the evidence in the present case, appellees did not meet their summary judgment burden of proving there is no genuine issue of material fact as to whether Handy was acting on behalf of an undisclosed principal. Thus, the trial court erred in granting summary judgment in favor of appellees with respect to this issue. *See Perez,* 819 S.W.2d at 471.

The judgment of the trial court is reversed and we remand this cause for a trial on the merits.

HILL, C.J., not participating.