# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00055-CV

**Rick J. Deyoe, Appellant**

**v.**

**Gray, Jansing & Associates, Inc., Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. 259,914, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Gray, Jansing & Associates, Inc. brought suit for breach of contract against appellant Rick Deyoe, Realtex Development Corporation, Cameron Place, Ltd., Cameron Place I, Ltd., and Cameron Place II, Inc., to recover $6982.38 in unpaid engineering services fees plus attorney's fees and costs in connection with the development of the Cameron Place Apartments project. After a bench trial, the trial court rendered judgment in favor of Gray Jansing, awarding the sum of $6982.38 plus pre- and post-judgment interest, attorney's fees, and costs. In two issues, Deyoe challenges the sufficiency of the evidence, asserting that he was not a party to the contract and the contract did not impose any obligations on him. We affirm the judgment.

## BACKGROUND

Deyoe is the president and sole shareholder of Realtex Development Corporation. Realtex was founded in April 1998 to develop multifamily housing projects for the affordable

housing market. Deyoe is also the registered agent for Cameron Place, Ltd., Cameron Place I, Ltd., and Cameron Place II, Inc., and the president of Cameron Place II, Inc. ("Cameron Place defendants"). The Cameron Place defendants did not answer and did not appear.

On August 4, 1999, Gray Jansing submitted a proposal for engineering services for the Cameron Place Apartments project. Under the Engineering Services Agreement, Gray Jansing was to provide engineering services to support the site development permit for the apartments. The proposal was submitted by Gray, Jansing & Associates, Inc., over the signature of John M. Jansing, Jr., P.E. The proposal was submitted to Deyoe in care of Cameron Place, Ltd., on August 16, at the address for Realtex. Deyoe countersigned the proposal on a line beneath the word "approved," and no representative designation appeared below Deyoe's name.

When Gray Jansing was not paid for services rendered, it filed suit against Deyoe, Realtex, and the Cameron Place defendants for breach of contract, suit on a sworn account, and, alternatively, quantum meruit. In addition, Gray Jansing asserted, as an alternate theory of recovery, that Deyoe and Realtex were the alter ego of the Cameron Place defendants. At trial, Gray Jansing claimed that Deyoe signed the contract in his individual capacity and was individually liable; Deyoe urged that he approved the proposal as agent for Cameron Place, Ltd., which was owned by an individual known as Charlie Palmer, and that Deyoe was not individually liable because Gray Jansing had actual knowledge of the identity of the principal.

After a bench trial, the trial court found in favor of Gray Jansing and filed findings of fact and conclusions of law in support of its final judgment. The trial court also found Deyoe

2

individually liable, Realtex not liable, and the Cameron Place defendants in default and liable. The findings of fact and conclusions of law also included the following:

*Findings of Fact*

1. On or about August 16, 1999, Plaintiff and Defendant Rick Deyoe entered into a contract whereby Plaintiff would provide engineering services for a development know as Cameron Place Apartments.

2. The contract was signed by Rick J. Deyoe in his individual capacity.

3. The contract on its face obligates Rick J. Deyoe and Cameron Place, Ltd. to perform under the contract.

4. Rick J. Deyoe did not disclose to Plaintiff any intent to sign the contract as an agent for any other person or entity.

5. Defendant Cameron Place, Ltd. is a Texas limited partnership, whose general partner is Cameron Place I, Ltd., a Texas limited partnership, whose general partner is Cameron Place II, Inc.

*Conclusions of Law*

2. Defendant Rick Deyoe failed to show by a preponderance of the evidence that he disclosed to Plaintiff his intent to sign only in a representative capacity.

3. Rick Deyoe is liable in his individual capacity.

4. Defendants Rick Deyoe, Cameron Place, Ltd., Cameron Place I, Ltd. and Cameron Place II, Inc. have breached the contract with Plaintiff for failure to pay for services rendered by the Plaintiff.

****

10. Plaintiff is not entitled to judgment against Realtex Development Corporation.

Deyoe appeals from this judgment.

3

## ANALYSIS

On appeal, Deyoe contends that the trial court erred in finding him individually liable because (i) he merely signed the agreement on behalf of a disclosed principal, and (ii) the agreement did not impose any obligations on him. He asserts that Gray Jansing had actual knowledge that Cameron Place, Ltd. was the principal. Gray Jansing responds that Deyoe signed the contract in his individual capacity, that he never disclosed that he signed the contract as agent for any principal, and that the principal was undisclosed.

When the trial court acts as fact-finder, we review its findings under legal and factual sufficiency standards. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review fact findings for sufficiency under the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In evaluating legal sufficiency, we view the evidence in the light most favorable to the prevailing party. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex. 1994). To support a reversal on grounds that the evidence is legally insufficient, we must be persuaded that reasonable minds could not differ on the matter in question. *Id*. at 25. When reviewing a challenge to the factual sufficiency of the evidence, we must consider, weigh, and examine all of the evidence in the record. *Plas-Tex*, *Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. *Anderson*, 806 S.W.2d at 795 & n.3. First, the record must be examined for

4

evidence that supports the finding, while disregarding all evidence to the contrary. *Id*. at 795. Second, if there is no evidence to support the finding, the entire record must then be examined to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

The law is well settled. Unless the parties have agreed otherwise, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract. *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *see also Burch v. D. L. Hancock*, 56 S.W.3d 257, 261 (Tex. App.—Tyler 2001, no pet.); Restatement (Second) of Agency § 320 (1957). If, however, the principal remains undisclosed, or if it is known that a person is acting as an agent but the principal's identity is not disclosed, the agent is a party to the contract. Restatement (Second) of Agency §§ 321, 322 (1957); *see Boyles v. McClure*, 243 S.W. 1080, 1081-82 (Tex. Comm. App. 1922, judgm't adopted); *see also* 12 Williston on Contracts § 35:43 (4th ed. 1999).

For an agent to avoid personal liability, he must disclose to the contracting party his intent to sign as a representative as well as the identity of his principal; the party with whom the agent deals has no duty to discover the principal. *Burris*, 714 S.W.2d at 435; *Mahoney v. Pitman*, 43 S.W.2d 143, 146 (Tex. Civ. App.—Amarillo 1931, writ ref'd). Uncommunicated intent will not suffice. *Seale v. Nichols*, 505 S.W.2d 251, 255 (Tex. 1974). The inference that the agent is a party to the contract exists until the agent gives such complete information concerning the principal's identity that the principal can be readily distinguished; if the other party has no reasonable means of ascertaining the principal, the inference prevails unless the parties have agreed otherwise. *Burris*,

714 S.W.2d at 435; *see also* Restatement (Second) of Agency § 321 cmt. a (1957). Disclosure of an agency, then, is incomplete to relieve an agent from liability unless it also includes the identity of the principal. *Burris*, 714 S.W.2d at 435.

The burden does not fall on the party dealing with the agent to discover the existence of the relationship merely because he had a means of discovering the agent's representative capacity. *Id.*; *Anderson*, 398 S.W.2d at 794. Actual knowledge of the existence and identity of the principal is the test; the contracting party's suspicion is not sufficient. *Southwestern Bell Media*, *Inc. v. Trepper*, 784 S.W.2d 68, 71 (Tex. App.—Dallas 1989, no writ); *Burris*, 714 S.W.2d at 435; *see also Johnson v. Armstrong*, 18 S.W. 594, 595 (Tex. 1892); *Carter v. Walton*, 469 S.W.2d 462, 471 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.). In determining whether sufficient disclosure of an agency relationship was made, we look to the time that the parties entered into the contract. *Posey v. Broughton Farm Co.*, 997 S.W.2d 829, 832 (Tex. App.—Eastland 1999, pet. denied); *Lacquement v. Handy*, 876 S.W.2d 932, 940 (Tex. App.—Fort Worth 1994, no writ). Knowledge acquired after a cause of action has accrued cannot affect the right to recover from the agent personally on a contract. *See Dodson v. Peck*, 75 S.W.2d 461, 463 (Tex. Civ. App.—Amarillo 1934, writ dism'd w.o.j.).

This case turns on the findings of fact by the trial court. The issue of disclosure is a question of fact. *Lacquement*, 876 S.W.2d at 939. Where conflicting evidence is presented concerning disclosure, the issue must be resolved by the trier of fact. *Id.* We are not authorized to substitute our assessment of the evidence for that of the trial court. *Southern States Transp.*, *Inc. v.*

6

*State*, 774 S.W.2d 639, 640 (Tex. 1989). If the trial court's findings are supported by probative evidence, then we may not disregard them as a matter of law. *Id*.

Deyoe challenges the trial court's finding that he contracted with Gray Jansing individually rather than as an agent. Here, the trial court heard evidence that Deyoe signed a contract with Gray Jansing for engineering services on a project known as the Cameron Place Apartment Project. The proof at trial showed that the sole agreement between the parties, the Engineering Services Agreement, was signed by John Jansing for Gray Jansing and by Rick Deyoe with no company identified next to his name. The letter agreement was addressed to Deyoe in care of Cameron Place Ltd. at the address for Realtex. Gray Jansing submitted its monthly invoices for work done on the project to Deyoe at Realtex. Deyoe testified that he informed Gray Jansing of the address for the contract. Two of the invoices were paid with checks drawn on Realtex's operating account; the checks were signed by Deyoe. Despite these payments, Deyoe never notified Gray Jansing that he was not the party responsible for the payments. Jansing testified at trial that Deyoe never identified anyone else who was responsible for the payment of the invoices. Jansing testified that he was "not aware of any other parties, any other owners, any other side agreements whatsoever. I dealt solely with Mr. Deyoe on this project in relation to setting up the project, reviewing the project, and proposing our services to complete the project for him." Jansing also testified that he "was led to believe that Mr. Deyoe was the owner of the project," and that he always believed he was doing business with Deyoe.

Deyoe testified that he was the president and sole shareholder of Realtex Development Corporation. His relationship to the Cameron Place defendants was less clear. When

7

asked whether he was the president of Cameron Place II, Inc., he responded, "I was appointed to that position by Charlie Palmer." He did not know whether he remained the registered agent for the company and could not recall whether he had incorporated the company, but he recalled that he or his company had paid an attorney for the incorporation of Cameron Place II, Inc. The following testimony transpired on examination of Deyoe by opposing counsel:

Q: You are a limited partner in Cameron Place, Ltd., aren't you?

A: No.

Q: You were at one time, weren't you?

A: I don't know.

Q: And you did not know at the time of your deposition, on November 12th, whether you were ever a limited partner in Cameron Place, Ltd., did you?

A: No.

Q: You have not done anything since November 12, 2002 to determine whether or not you are a limited partner in Cameron Place, Ltd., have you?

A: No.

Q: Okay. You are a limited partner for Cameron Place I, Ltd., aren't you?

A: No.

Q: Well, at the time of your deposition, November 12th, you said that you did not know if you were a limited partner for Cameron Place I, Ltd. Do you now know for sure that you are not a limited partner?

A: No.

Q: Okay. You have not done anything in the last eight months to determine whether or not you are now or ever were a limited partner for Cameron Place I, Ltd., have you?

A: No.

8

On examination by his counsel, Deyoe recalled that he had not received a K-1 statement for Cameron Place, Ltd. or for Cameron Place I, Ltd., which, according to Deyoe's testimony, would "indicate [he] was never a limited partner." Deyoe testified that the address on the agreement belonged to Realtex and that he had given the address to Jansing for purposes of the contract. He denied knowledge of any bank accounts opened for the Cameron Place defendants and of Realtex's payments to eight entities on behalf of Cameron Place in the amount of $52,000. Deyoe further testified that any money paid by Realtex was funded by Charlie Palmer. Upon receipt of the invoices from Gary Jansing, Deyoe would contact Palmer and Palmer would wire the funds. The evidence at trial showed Deyoe had received and maintained records for wire transfers from Palmer in the amount of $25,000.

In a pre-trial Request for Disclosure admitted into evidence, Deyoe stated that he and Realtex "have no affiliation with the Cameron Place entities." He testified at trial, however, that he worked for them and acted as their agent. When asked whether he had ever disclosed to John Jansing or to Gray Jansing that Charlie Palmer was the owner of Cameron Place, Ltd., Deyoe could not recall. Deyoe testified that he and Realtex were originally the developer of the project but that "Charlie Palmer decided he wanted to take over the development and it was his project." Deyoe did not know whether Jansing knew that Palmer took over the project and could not recall whether he told him that information.

Apart from his testimony in support of his contention that Gray Jansing had actual knowledge, Deyoe places significance on the fact that when Gray Jansing initially filed suit, it sued only Cameron Place, Ltd. Deyoe was identified only as the registered agent of Cameron Place, Ltd.

9

in the original petition. Deyoe and the other parties were later added to the lawsuit in the first amended petition, which was filed when Gray Jansing changed legal counsel. From this, Deyoe argues that Gray Jansing had actual knowledge of the agency relationship and that he "judicially admitted" that the party owing the debt was Cameron Place, Ltd., not Deyoe or Realtex. But statements contained in superseded pleadings—unlike live pleadings—are not conclusive and indisputable judicial admissions. *Sosa v. Central Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995). In any event, this issue was waived when contrary evidence was introduced and appellant failed to object.

We have reviewed the record and conclude that there is evidence in the record to support each of the findings of fact. Specifically, the evidence in the record supports the trial court's finding that Deyoe signed the contract in his individual capacity, that it obligated Deyoe and Cameron Place, Ltd. to perform under the contract, and that Deyoe did not disclose to Gray Jansing any intent to sign the contract as an agent for any other person or entity. To be sure, Deyoe disputes that he signed in his individual capacity. He offered no testimony, however, that he represented to Jansing or anyone at Gray Jansing that he was acting on behalf of Charlie Palmer or Cameron Place. Jansing's testimony that he thought Cameron Place, Ltd. was also a party to the contract is at odds with his other testimony that "I never understood there to be anybody else involved other than Mr. Deyoe. I was never told that there were any other parties involved." For Deyoe to avoid liability, however, he must disclose both that he is acting in a representative capacity and the identity of the principal. The record does not reveal any great weight of evidence contradicting the trial court's findings in this case.

10

In both *Burris* and *Lacquement*, the courts held the agent liable because the contracting party had no knowledge of the unidentified principal in the transactions. 714 S.W.2d at 437; 876 S.W.2d at 940. In those cases, the agent disclosed his representative status, but failed to disclose the true identity of the principal. Likewise, here the court found that Deyoe failed to disclose his intent to sign as agent or the principal's actual identity. The remaining question is whether Gray Jansing had actual knowledge. The ownership of the Cameron Place defendants and the relationship between Charlie Palmer and Deyoe remained contradictory even in Deyoe's testimony at trial. Deyoe testified that Palmer took over the development of the Cameron Place project, but he could not recall whether he ever informed Jansing that Palmer was the owner or developer of the Cameron Place project. At most, the identity of Cameron Place—but not its role—was known to Gray Jansing. Because the duty to disclose lies with the agent—and the party with whom the agent deals is not obligated to discover the existence of a principal or his identity—a party's mere knowledge that others are somehow involved does not transform it into knowledge of agency sufficient to defeat liability. *See Burris*, 714 S.W.2d at 437.

It was for the trial court to resolve the conflicting testimony, and the court was entitled to evaluate the witnesses' credibility and accept or reject some or all of the testimony. This Court is not a fact-finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different conclusion could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). Because there was evidence to support the trial court's finding that the agency relationship was undisclosed and that Deyoe signed the

11

contract in his individual capacity, we hold that the evidence is legally and factually sufficient to support the trial court's findings.

Having overruled Deyoe's issues, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   March 17, 2005