EID CORP. V. SUNBELT, INC.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-261-CV

EID CORP. D/B/A COME-N-GO APPELLANTS

AND MOHD S. ALHAJEID

V.

FORT WORTH-TARRANT SUNBELT, INC. APPELLEE

D/B/A DFW SUNBELT BUSINESS ADVISORS 

------------

FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellants EID Corporation (“EID”) d/b/a Come-N-Go and Mohd S. Alhajeid appeal the trial court’s judgment in favor of appellee Fort Worth-Tarrant Sunbelt, Inc. d/b/a DFW Sunbelt Business Advisors (“Sunbelt”) in its suit to recover broker fees under a listing agreement.  In appellants’ first point, they contend that the trial court erred by granting judgment in favor of Sunbelt because there was no evidence or insufficient evidence to establish that Alhajeid was liable in his individual capacity.  In their second point, appellants argue that the trial court erred by granting judgment against EID because there was no evidence or insufficient evidence to establish that EID was liable because the parties entered into a cancellation agreement.  We affirm.

II. Background Facts

On October 28, 2003, Alhajeid entered into a written listing agreement with Sunbelt for the sale of Come-N-Go, a convenience store (“business”). According to the terms of the listing agreement, Sunbelt agreed to refer potential buyers to Alhajeid and Alhajeid agreed to pay Sunbelt a commission of twelve percent on the purchase price, but not less than $10,000.  The listing covered the sale of the business only.  The listing agreement stated that if Alhajeid canceled or withdrew from the contract, he would still be liable for the commission.  Sunbelt found two potential buyers for the business, but Alhajeid told Sunbelt that he had changed his mind and did not want to sell the business.  Instead, on January 9, 2004, Alhajeid entered into a contract of sale with John Siyoung Lee, a buyer who was not referred by Sunbelt.  The Lee contract was for $200,000 for the property, and $236,000 for the business. On February 12, 2004, Alhajeid signed a cancellation agreement with Sunbelt. Sunbelt filed suit against Alhajeid and EID after they refused to pay the twelve percent commission.  

On April 26, 2005, the trial court entered judgment in favor of Sunbelt and against EID and Alhajeid, jointly and severally, for $18,000, prejudgment and postjudgment interest, attorney’s fees, and court costs.  Upon appellants’ request, the trial court entered findings of facts and conclusions of law.

III.  Standards of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer.  
Ortiz v. Jones,
 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel,
 881 S.W.2d 295, 297 (Tex. 1994).  
Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings.  
McGalliard v. Kuhlmann
, 722 S.W.2d 694, 696 (Tex. 1986); 
Reliance Ins. Co. v. Denton Cent. Appraisal Dist.
, 999 S.W.2d 626, 629 (Tex. App.—Fort Worth 1999, no pet.).  

Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. 
 Dominey v. Unknown Heirs and Legal Representatives of Lokomski
, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.); 
Rogers v. City of Fort Worth
, 89 S.W.3d 265, 277 (Tex. App.—Fort Worth 2002, no pet.).

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

IV.  Applicable Facts

At trial, Ise Lushaj testified that in 2003 and 2004 he worked as a commercial business broker for Sunbelt.  Lushaj met with Alhajeid because Alhajeid was interested in selling Come-N-Go.  After their meeting, Lushaj left the listing agreement with Alhajeid to look over.  Lushaj stated that he went through every line of the listing agreement with Alhajeid, and that Alhajeid never told him that he did not understand what he was signing.  On October 28, 2003, Alhajeid signed the Sunbelt listing agreement to sell Come-N-Go for $150,000, which amount included a twelve percent commission to Sunbelt. Lushaj stated that the handwritten items in the listing agreement were written entirely by Alhajeid.
(footnote: 2)  Additionally, Lushaj stated that Alhajeid presented himself as the sole owner of Come-N-Go.

Lushaj testified that after Alhajeid listed the business with Sunbelt, he presented two full-price offers of $150,000 to Alhajeid.  He said that both buyers had the funds to purchase the business and that both offers had been accompanied with a $5,000 deposit.  Lushaj stated that he called Alhajeid on numerous occasions and told him about the two offers, but that each time, Alhajeid told him that he was not in town.  On February 11, 2004, Lushaj went to Come-N-Go to show Alhajeid the two offers.  However, Alhajeid told him, “I change my mind, I [am] not selling it.”  Lushaj testified that Alhajeid never told him that the offers were unacceptable.  Lushaj stated that even though the offers never turned into contracts, he still expected to get paid his commission. 

Lushaj testified that he later learned that on January 9, 2004, Alhajeid had entered into a contract to sell the business to Lee instead for $200,000.  Alhajeid had never told Lushaj that he was working on a side deal to sell Come-N-Go to Lee.  After learning about the Lee contract, Lushaj’s boss prepared a written “Listing Cancellation and Withdrawal from Sale Notification” agreement for Alhajeid to sign.  The cancellation agreement removed Come-N-Go from Sunbelt’s listings and cancelled the listing.  But Lushaj testified that he specifically told Alhajeid that he still owed the full commission price of $18,000, twelve percent of the $150,000 purchase price shown in the listing agreement and in the offers Lushaj presented to Alhajeid under the listing agreement.  Alhajeid signed the cancellation agreement on February 12, 2004.

Alhajeid testified that EID owned the business, Come-N-Go, but that he personally owned the real estate upon which Come-N-Go was located.  He stated that when he entered into the listing agreement with Lushaj, he was only selling the business, not the real estate.  Alhajeid testified that he signed the listing agreement the same day that he met with Lushaj, not a couple of days later as Lushaj had testified.  In regard to the listing agreement,  Alhajeid stated that he could not read English very well and that he could only fill in the easy parts of the agreement.  He said that he did not understand the “hard parts” of the listing agreement. 

Alhajeid testified that on January 13, 2004, he left for Jordan and that he returned on February 10, 2004.  He stated that he never received any phone calls or talked to Lushaj while he was in Jordan.  Alhajeid stated that on February 11, 2004, between 2:00 p.m. and 3:00 p.m., he received a phone call from Lushaj stating that he had received two offers for the business.  Lushaj told Alhajeid that he was going to show Come-N-Go to the prospective buyers. However, Alhajeid testified that when Lushaj arrived at Come-N-Go, Lushaj walked in and handed him the cancellation agreement and told him to sign it.  Alhajeid stated that he did not read the cancellation agreement before he signed it; however, he said that he does not typically read contracts before signing them because he usually has people read them to him.  He further stated that he signed every document as a corporate representative and not in his individual capacity.

Alhajeid testified that he had placed an advertisement in the newspaper to sell Come-N-Go before he entered into the listing agreement with Sunbelt. He stated that Lushaj knew that he was advertising in the newspaper and that Lushaj actually saw the advertisement.  Alhajeid stated that on October 25, 2003, he was contacted by a potential buyer who had seen the advertisement in the newspaper.  On January 9, 2004, Alhajeid testified that he signed a real estate and commercial business contract with the buyer, Lee, but that he did not call and tell Lushaj before he left for vacation. 

Muslam Al Trie testified that he was working at Come-N-Go on February 11, 2004 when Lushaj came into the store.  He stated that Lushaj walked into the store, handed Alhajeid the cancellation agreement, told  him to sign it, and said, “I don’t have time to waste.”

V.  Analysis

A. Alhajeid’s Personal Liability

In his first point, Alhajeid complains that the evidence is legally and factually insufficient to establish that he was liable under the listing agreement in his individual capacity.  Sunbelt argues that there is sufficient evidence to show that Alhajeid is shown as the seller on the face of the listing agreement and that the evidence also demonstrates that Alhajeid signed it in his individual capacity because he never told Lushaj that he intended to sign only as an agent or representative of EID.

An unambiguous contract must be construed by the court as a matter of law and not left open to the interpretation of its terms by a jury;  however, it is proper to allow the trier of fact to interpret an ambiguous contract.  
Burlington N. & Santa Fe Ry. Co. v. S. Plains Switching, Ltd.
, 174 S.W.3d 348, 356 (Tex. App.—Fort Worth 2005, no pet.);
 see Coker v. Coker
, 650 S.W.2d 391, 394 (Tex. 1983).  The question of whether a contract is ambiguous is one of law for the court.  
Heritage Res., Inc. v. NationsBank
, 939 S.W.2d 118, 121 (Tex. 1996). A contract is not ambiguous if its words can be given a definite or certain meaning as a matter of law.  
Burlington N., 
174 S.W.3d at 356; 
Coker
, 650 S.W.2d at 393.  

The listing agreement shows that Alhajeid is the seller of Come-N-Go and shows the firm name as “Come-N-Go d/b/a EID Corporation.”  The signature block was filled out and signed as follows:

Come-N-Go

Company Name

/s/ Mohd Alhajeid

Seller

10-28–03

Date

We hold that the listing agreement unambiguously shows that Alhajeid signed it in his individual capacity because it identifies him as the seller of Come-N-Go and because he signed it as the seller of Come-N-Go without any indication that he was signing in any other capacity.  The only mention of EID is as an assumed name of Come-N-Go. 

Additionally, for an agent to avoid personal liability on a contract, he has the duty to disclose not only that he is acting in a representative capacity, but also the identity of his principal.  
A to Z Rental Ctr. v. Burris
, 714 S.W.2d 433 435 (Tex. App.—Austin 1986, writ ref’d n.r.e.);
 
Dodds v. Charles Jourdan Boutique, Inc.
, 648 S.W.2d 763, 766 (Tex. App.—Corpus Christi 1983, no writ); 
Mahoney v. Pitman
, 43 S.W.2d 143, 146 (Tex. Civ. App.—Amarillo 1931, writ ref’d).  If the principal remains undisclosed, or if it is known that a person is acting as an agent but the “identity” of the principal is not disclosed, the agent is considered to be a party to the contract.  
Lacquement v. Handy
, 876 S.W.2d 932, 939 (Tex. App.—Fort Worth 1994, no writ); 
see Burris
, 714 S.W.2d at 435.   

An agent cannot claim immunity from personal liability merely because the party with whom the agent dealt had a means of discovering the agent's representative capacity.  
Burris
, 714 S.W.2d at 435.  The test of disclosure is the other party's knowledge, or reasonable grounds to know, of the principal’s existence or identity, irrespective of the source from which the other party obtains it.  
Id.
  The other party’s actual knowledge of the principal, not just the other party's suspicion, is the test.  
Id.  
If the evidence concerning disclosure is conflicting, the issue of disclosure is a fact issue that must be decided by the trier of fact.  
Lacquement, 
876 S.W.2d at 939; 
see Sw. Bell Media, Inc. v. Trepper
, 784 S.W.2d 68, 72 (Tex. App.—Dallas 1989, no writ).  

Here, Alhajeid signed the Sunbelt listing agreement without mentioning that he was acting as a representative of EID or that he intended to sign in his representative capacity.  
Further, Alhajeid signed the cancellation agreement in his individual capacity, not as an agent for EID.  Lushaj testified that Alhajeid presented himself as being the sole owner of Come-N-Go at the time the listing agreement was signed.  The firm’s name is shown as Come-N-Go with EID listed as Come-N-Go’s d/b/a.  After reviewing the evidence, we hold that the evidence is legally and factually sufficient to show that Alhajeid did not sign the listing agreement as merely an agent of EID, but instead signed it in his individual capacity.  Thus, we overrule appellants’ first point.

B.  EID’s Liability

In appellants’ second point, they complain that the trial court erred by granting judgment in favor of Sunbelt because there was no evidence or insufficient evidence to establish that EID was liable on the listing agreement because it had been terminated by the cancellation agreement.
(footnote: 3)  Appellants contend that Sunbelt relieved EID of its obligations under the listing agreement by executing and signing the cancellation agreement.

The cancellation agreement was between Sunbelt and Alhajeid as “Owner of EID Corp. dba ‘Come-N-Go,’” and was signed as such.  The pertinent part of the cancellation agreement provides,

I agree that [Sunbelt] has fulfilled [its] primary brokerage function concerning the sale of my business, “Come-N-Go[.]” DFW Sunbelt Business Advisors and its agent, Ise Lushaj, have brought and I have in my possession two separate offers for $150,000 that fulfill the requirements of the Listing Agreement, dated 10/23/03.  However, I still am canceling the listing agreement contract and withdrawing my business from sale.

The pertinent parts of the listing agreement provide,

1.  The Seller hereby engages [Sunbelt], 
on a sole and exclusive basis
, to sell the assets of the above described business, including all fixtures, equipment, goodwill, trademarks, trade names, and inventory associated therewith.

  

2. Seller agrees to pay [Sunbelt] 12% of the purchase price, but in any event not less than $10,000.

3.  Seller agrees that 
if this listing is cancelled or the property withdrawn from sale during the listing term by Seller, the commission shall become immediately due 
by Seller to [Sunbelt].  If Seller refuses or is unable to comply with the listing term upon the terms set forth above, the commission shall become immediately due by the Seller to [Sunbelt].
(footnote: 4) [Emphasis added.]

Appellants argue that because Sunbelt drew up the cancellation agreement, Sunbelt intended to relieve EID from its obligations under the listing agreement.  However, the cancellation agreement does not state that Sunbelt waived its right to a commission under the listing agreement, nor does it purport to contradict or delete the parts of the listing agreement entitling it to a commission 
even if 
the listing agreement is cancelled.  We perceive no ambiguity in the language of the cancellation agreement.  
See Universal C.I.T. Credit Corp. v. Daniel
, 150 Tex. 513, 243 S.W.2d 154, 157 (1951) (holding that unambiguous contract will be enforced as written and parol evidence will not be received to create ambiguity or give a meaning different from that which the language imports); 
see also Doncaster v. Hernaiz
, 161 S.W.3d 594, 603 (Tex. App.—San Antonio 2005, no pet.).  It unambiguously states that the listing agreement is cancelled and that Sunbelt fully performed its obligations under the listing agreement; it does not relieve the seller of any obligation to pay a commission under paragraph three of the listing agreement.
(footnote: 5)  Thus, appellants materially breached the listing agreement by refusing to pay Sunbelt the commission after admitting that it had fully performed under the listing agreement.

After reviewing the evidence, we hold that the evidence is legally and factually sufficient to establish that the cancellation agreement did not relieve EID of its obligation to pay Sunbelt the commission price for the sale of Come-n-Go under the January 9 listing agreement.  Therefore, we overrule appellants’ second point.

VI.  Conclusion

Having overruled appellants’ two points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and MCCOY, JJ.

DELIVERED: June 8, 2006

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
All of the blanks in the listing agreement form were completed by Alhajeid in his handwriting, including the seller’s information, business type, and broker’s fee.

3:
Appellants limit their argument that EID was not liable on the listing agreement to the cancellation agreement issue; they never contend that EID was not liable on the listing agreement for any other reason—for example, because it is not shown anywhere on the agreement as a party.  Therefore, we will assume for purposes of this discussion that EID was originally liable on the listing agreement along with Alhajeid.  
See Pat Baker Co. v. Wilson
, 971 S.W.2d 447, 450 (Tex. 1998) (holding appellate court cannot reverse a case on a ground not presented in the briefs).  

4:
This portion is reiterated in an amendment to the listing agreement.

5:
In its finding of fact number ten, the trial court found that “[t]he Cancellation further states that [appellants]. . . will not be paying [Sunbelt] the 12% brokerage fee due on the $150,000 offers.”  This finding is not supported by the plain language of the cancellation agreement, nor any other evidence in the record.  
See EPGT Tex. Pipeline, L.P. v. Harris County Flood Control Dist., 
176 S.W.3d 330, 340 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding unambiguous contracts are to be construed as a matter of law); 
Lesikar v. Rappeport
, 33 S.W.3d 282, 311 (Tex. App.—Texarkana 2000, pet. denied)  (stating appellate courts can “unfind” facts).