HEARD v. CLEGG et al.[†]

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 6, 1912. Rehearing Denied Feb. 3, 1912.)

1. PRINCIPAL AND AGENT (§ 123*)—ARBITRATION—AUTHORITY OF AGENT—EVIDENCE.

Evidence *held* to support a finding that an agent had no authority to enter into an agreement for arbitration.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 420–429; Dec. Dig. § 123.*]

2. PRINCIPAL AND AGENT (§ 120*)—AUTHORITY OF AGENT—EVIDENCE.

In an action to enforce an award of arbitrators based on an agreement for arbitration entered into by an agent of one of the parties, testimony by the principal that he had no knowledge of the proposition to arbitrate at the time he wrote a letter which it was claimed authorized arbitration was admissible.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 402–412; Dec. Dig. § 120.*]

3. EVIDENCE (§ 155*)—ADMISSIBILITY—SIMILAR EVIDENCE BY ADVERSE PARTY.

Where a party has introduced evidence on a particular subject-matter, the adverse party may introduce similar evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458; Dec. Dig. § 155.*]

4. EVIDENCE (§ 271*)—SELF-SERVING DECLARATIONS.

A portion of a letter, written by the party introducing it, which was merely argumentative and self-serving, was properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1104; Dec. Dig. § 271.*]

5. EVIDENCE (§ 383*) — DOCUMENTARY EVIDENCE—PORTION OF LETTER.

That a portion of a letter had been offered and received in evidence without objection did not require that other portions of the letter which were argumentative and self-serving in their nature be also admitted in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1660–1677; Dec. Dig. § 383.*]

6. PRINCIPAL AND AGENT (§ 194*)—AUTHORITY OF AGENT—INSTRUCTIONS.

Where, in an action against a principal and agent, the acts and declarations of the agent were first admitted in evidence, against the agent only, but upon conclusion of the evidence plaintiff tendered such acts and declarations as evidence against the principal also, an instruction that, as far as the tender was concerned, such testimony as was limited in the early part

of the case to the agent, is now before the jury for all purposes, but, if the jury do not find and believe from the evidence that the principal authorized the agent to act in the transactions in controversy, they should not consider the acts and declarations for any purpose as against the principal, was not open to the objection that it excluded consideration of the acts and declarations of the agent in determining the question of agency.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 194.*]

7. Principal and Agent (§ 194*)—Actions—Instructions.

In an action to enforce an award based on an agreement for arbitration entered into by defendant's agent, the question as to the agent's authority being in issue, an instruction defining the term "agency" was not improper.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 194.*]

8. Principal and Agent (§ 166*)—Arbitration—Authority of Agent.

Where an agent without authority entered into an agreement for arbitration, the principal was not bound by the award, though he was informed of the pendency of the arbitration before the award was made.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 627–633; Dec. Dig. § 166.*]

9. Principal and Agent (§ 150*)—Contract of Agent—Liability of Agent.

Where an agent when he signed an agreement for arbitration on behalf of his principal informed the other party to the agreement that he had no authority to so sign, the agent was not liable on the agreement.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 556–563; Dec. Dig. § 150.*]

10. Principal and Agent (§ 150*)—Arbitration Agreement—Liability of Agent.

Where an agent, on his own behalf, and on behalf of his principal, but without authority to do so, signed an arbitration agreement, and the award was in favor of the agent but against the principal, no liability attached to the agent on the award, since it was in his favor, and any liability incurred by him on account of the unlawful assumption of authority was in damages as for a tort, and, it not being alleged in an action against the principal and agent to enforce the award that either the principal or the agent was insolvent, judgment was properly rendered for defendants.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 150.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by George M. Heard against T. J. Clegg and another. From a judgment for defendants, plaintiff appeals. Affirmed.

Templeton & Agerton and C. S. Todd, for appellant. Bell & Milam, for appellee Clegg. Flournoy, Smith & Storer, for appellee Bomar.

CONNER, C. J. The appellant, George M. Heard, instituted this suit upon an unsatisfied award of one J. T. Martin, arbitrator, made on May 10, 1907, in favor of appellee D. T. Bomar, but against appellee T. J. Clegg for the sum of $6,000. The plaintiff Heard, after setting up certain controversies arising out of a contract in which all the parties hereto were alleged to have been jointly interested for the purchase of some 60,000 acres of land in Tom Green county, alleged that it had been finally agreed between the plaintiff Heard and the defendant Bomar, acting both for himself and as the agent and attorney of the defendant T. J. Clegg, to submit the determination of the matters in controversy to said Martin, the result of which was the award stated. The defendant Clegg, among other things, presented a formal plea of non est factum, alleging that the agreement in writing to submit the matter to arbitration to which his name had been signed by D. T. Bomar and which was made an exhibit to the plaintiff's petition was not his act or deed, and had not been authorized nor ratified by him. Other pleadings so far as necessary will be hereinafter indicated. The case was submitted to the jury on special issues, all of which were answered by the jury in favor of both defendants, and judgment was rendered accordingly.

The controlling question presented on this appeal is whether the evidence supports the jury's findings and the judgment in appellee's favor on the issue of Bomar's want of authority.

[1] We have carefully considered the testimony, and think it admits of but one answer, and that is that the evidence fully sustains the findings of the jury to the effect that the agreement for arbitration and the award were wholly unauthorized by the appellee Clegg, and that neither at any time was ratified or confirmed by him.

There is evidence tending to show that the contract for the purchase of the Tom Green County ranch required the advance of a considerable sum of money, appellant's proportionate share of which he was either unwilling or unable to advance, and that thereupon Clegg assumed authority to associate himself with other persons and to close the deal. Whereupon appellant claimed commissions or compensation for negotiating the contract. Concerning differences thus arising appellee Bomar on March 15, 1907, wrote a letter to appellant, in which after reciting the appellees' view of the controversy, and after affirming the wish to do the right thing, stated that he had "taken the responsibility" of offering to let Heard "take the whole of this contract (referring to the contract as consummated) and to enjoy every right under it or any interest in it that you want." In this letter Bomar further stated: "I am perfectly willing to submit to Mr. Martin the question of the determination of your rights in this controversy." On the next day, to wit, March 16th, Clegg sent to Heard the following telegram: "I confirm Bomar's letter to you of the 15th." And also on the same day wrote to Heard the following letter: "Dear Sir: I arrived here this morning and have seen D. T. Bomar's letter to you of March

15th and have wired you to-day as follows: 'I confirm Bomar's letter to you of the 15th,' which I now confirm. The last time I saw you. you told me that you had no means beyond your homestead and owed on that $1,700 and you proposed to convey this to me for the purpose of securing me in raising the money for you and I jointly to go into this transaction, which I then declined and I fully understood then from you that you had no opportunity of carrying through this undertaking. Now, while I don't doubt for a moment, believe or admit that I have in the slightest degree done you any injury, for the purpose of putting this question forever at rest I hereby consent to turn over my entire right in the contract made by you with the Collyns estate to you and let you carry it out in your own way." On the 18th Heard telegraphed from Little Rock to appellee D. T. Bomar, and also wrote to the same effect, as follows: "Accept your proposition to arbitrate in letter of 15th. Decline to re-enter negotiations. Wrote fully yesterday; will reach you to-day." After some further correspondence, Bomar and Heard on April 24, 1907, entered into a final written agreement to submit the matter to Martin as arbitrator in accord with terms stated to which Bomar signed not only his own name, but that also of Clegg. Both Bomar and Clegg testified upon the trial explicitly that Bomar was without authority to make the agreement, or to represent Clegg in the arbitration proceedings thereafter had. That appellant knew of this want of authority on the part of Bomar before the agreement to arbitrate was made scarcely admits of doubt, for in a letter written by Bomar to Heard on March 27th preceding the execution of the agreement Bomar, among other things, said: "I do not represent Mr. Clegg in the matter. He is my personal friend, and a man in whom I have the greatest confidence, and what I have heretofore said to you about seeing that he would submit to this arbitration has been based upon my belief that he will do anything reasonable that I ask him to do." And Mr. Heard while testifying upon the trial stated, among other things, upon cross-examination that: "I knew when I signed the arbitration agreement on April 24th that Bomar had written me that he did not represent Mr. Clegg in the matter, but I then thought as a matter of fact that he did represent him." We think the testimony referred to, aided as it is by other circumstances appearing in the evidence, undoubtedly authorized the conclusion expressly affirmed by the jury that Bomar was without authority to make the arbitration agreement or to represent appellee Clegg in the arbitration proceedings.

It is insisted that Bomar's letter of March 15th, together with Clegg's telegram and letter confirming the same and appellant's acceptance of the offer to arbitrate, constitute an agreement binding upon Clegg. Mr. Clegg testified upon the trial to the effect that at the time of his telegram and letter confirming the Bomar letter he had heard read a part only of the Bomar letter, and was not aware of the fact that it contained an offer to arbitrate, and this seems to have corroboration in Clegg's letter of confirmation wherein he specifically declares his willingness to surrender to Heard his position in the contract without making reference of any kind to the proposition to arbitrate. There is also evidence tending to show that Clegg did not consider Martin impartial, and that, when he was informed of Bomar's offer to arbitrate, he immediately disavowed a willingness to do so unless a right of appeal was given, and no such right was embodied in the agreement made by Bomar. But if it be assumed that Bomar's letter and Clegg's confirmation thereof, together with appellant's acceptance, constitute a contract on Clegg's part, it but constitutes a contract to arbitrate. For a breach of this appellant's remedy is manifestly not upon the award, but for special damages, if any, that arose because of Clegg's violation of the agreement to enter into the arbitration, and no such special damages have been pleaded. So that in no view of the case do we find error in the determination of Clegg's want of liability on the award made the basis of appellant's suit.

[2] Some other questions having actual or probable relation to the question already discussed and determined should be briefly noticed. The testimony of Clegg complained of in the first assignment, to the effect that he was without knowledge of the alleged proposition to arbitrate in Bomar's letter of March 15th, was directly pertinent to his defense, and the court committed no error in admitting it.

[3] The evidence complained of in the third assignment was clearly admissible as a part of that upon the same subject which had been offered and admitted in behalf of appellant.

[4, 5] And that part of the letter to the exclusion of which complaint is made in the fourth assignment was properly excluded as argumentative and self-serving, and the objections were not obviated by the fact that a part of the same letter had been offered and read in behalf of appellant without objection on the part of appellees.

[6] It appears from appellant's bill of exception No. 5 that the acts and declarations of Bomar were first admitted in evidence as against him only, but that, upon the conclusion of the introduction of the evidence, appellant tendered such acts and declarations as against the defendant Clegg also, whereupon the court gave the following charge: "As far as that tender is concerned, the jury is instructed that such testimony as was limited in the early part of this case to defendant Bomar is now before you for all purposes, however, with the statement that, if you do not find and believe from the evidence with Mr. Clegg authorized Mr. Bomar

to act as his agent in the transactions detailed in these letters, in writing the letters or in entering into or carrying on the negotiations concerning this arbitration, you will not consider it for any purpose as against Mr. Clegg." We do not interpret the charge as excluding consideration of the acts and declarations of Bomar in determining the question of his agency vel non. The instruction went no farther than to inform the jury in effect that if, after a consideration of all the evidence before them, they found that Bomar was not authorized to act for Clegg, in that event Bomar's acts and declarations were not binding on the defendant Clegg. So construed, the charge was undoubtedly correct, and the fifth and sixth assignments are accordingly overruled.

[7] Nor do we find error in the court's action complained of in the seventh assignment in giving a definition of the term "agency." It is not complained of as incorrect, and we see nothing objectionable in the mere fact that the charge was given; on the contrary, we think it was proper information for the jury's guidance. The matters complained of in the second, eighth, and ninth assignments relate to the issue of whether Martin was an impartial and disinterested arbitrator, and are immaterial in view of the conclusions already given.

[8] So, too, is it immaterial whether Clegg knew of the pendency of the arbitration before the award. Said second, eighth, and ninth assignments are, accordingly, overruled. From the eleventh to the twentieth assignments complaint is made of the action of the court in refusing to submit to the jury certain questions presented in behalf of appellant, but, in so far as material, we think the questions propounded by the court fully sufficient.

[9] There but remains appellant's contention to the effect that he was at least entitled to a judgment against Bomar, against whom appellant had pleaded in the alternative, because of the undisputed fact that Bomar assumed to act for Clegg. That this assumption on Bomar's part was fraudulent as alleged cannot be successfully maintained in view of the undisputed fact that, before the arbitration agreement was entered into, appellant was distinctly informed by Bomar that he in reality had no authority from Clegg to make the agreement.

[10] On the award actually made, no right of action as against Bomar can be predicated, for the award was in Bomar's favor on the issue of a direct personal liability. If Bomar's assumption of authority be construed as a guaranty that Clegg would abide Martin's determination, the legal consequence of the breach of warranty would be for special damages in the way of loss of time, expenses, etc., which was neither alleged nor proven by appellant. The fact that one assumes to act as agent for another in signing an obli-gation in the name of such other without authority does not bind the acting agent on the contract. The damages in such case are measured by the injuries resulting from the want of power, and not by the terms of the contract. Heard's right of action against Bomar, if any, was not, as stated, on the award of the arbitrator, but at best for consequential damages, resulting from the unauthorized act of Bomar. See Doolittle v. Murray, 134 Iowa, 536, 111 N. W. 999, Hall v. Trandall, 29 Cal. 568, 89 Am. Dec. 64, White v. Madison, 26 N. Y. 117, Barlett v. Tucker, 104 Mass. 336, 6 Am. Rep. 240, Mechem on Agency, § 550, and other authorities cited in the brief of appellee Bomar. It is not alleged in appellant's petition that either Clegg or Bomar is insolvent, nor is any fact alleged tending to show that the unauthorized award in any way could or did deprive or defeat Heard of any remedy or cause of action that he justly had against Clegg.

On the whole, we conclude that all assignments of error must be overruled, and the judgment affirmed.