VEAZIE et al. v. BEACH PLUMBING & HEATING CO. (No. 9671.)

(Court of Civil Appeals of Texas. Fort Worth. July 2, 1921.)

1. Principal and agent ⊕➾136(2)—Contract for disclosed principal presumed to bind him only.

When a contract is made by a known agent for the benefit of a disclosed principal, and the agent does not expressly bind himself, the assumption is that he intends only to bind his principal.

2. Principal and agent ⊕➾136(2)—Agent not liable on written contract for disclosed principal.

Where the promise is made in the name of a principal who might have authorized it and as his contract, the agent cannot be held liable upon the contract of warranty or indemnity, even in the case of a written contract, where the assumed relation of agency appears upon the face of it.

3. Principal and agent ⊕➾190(3)—Evidence held to show contract was with disclosed principal.

In action on contract against both principal and agents, evidence held to show that plaintiffs knew that the principal was liable on the contract, and that the agents were acting as such, and that the latter were not guilty of any fraud or misrepresentation.

4. Principal and agent ⊕➾138—Immaterial that agent did not disclose agency, if it is known.

It is immaterial whether the agent disclosed his character or his principal, if it be actually known at the time to the party with whom he is dealing, or if facts surrounding the transaction are sufficient to put the other party upon notice of inquiry of the existence of a principal.

---

⊕➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Principal and agent ⊜145(4)—Election must be made to hold principal or agent.**

In the absence of a plea and proof that the agent bound himself individually as a guarantor or indemnitor, a third person cannot recover against such agent and the principal, too, even though the agent did not disclose his principal at the time of the making of the contract; for, where a suit is brought against the agent of an undisclosed principal, and the agent discloses his principal, who is thereupon brought in as a party, and the plaintiff establishes a case both against the agent and the principal, he must elect which of the two he will ask judgment against.

Appeal from Tarrant County Court; W. P. Walker, Judge.

Action by J. B. Beach and another, doing business under the name of the Beach Plumbing & Heating Company, against the Western Builders, Incorporated, O. C. Veazie, C. S. Gaynor, and others. From judgment for plaintiff against the named defendants, the two last named defendants appeal. Reversed and rendered in part, and undisturbed in part.

Stuart & Rattikin, of Fort Worth, for appellants.

Chas. T. Rowland and Marvin H. Brown, both of Fort Worth, for appellee.

BUCK, J. Plaintiffs, J. B. Beach and V. H. Beach, doing business under the name of the Beach Plumbing & Heating Company, filed this suit against the Western Builders, Inc., hereinafter called Western Builders, R. A. Cox, M. Whitley, C. C. Morgan, and O. C. Veazie and C. S. Gaynor, the last-named two composing a partnership doing business under the name of Veazie & Gaynor. From a judgment for plaintiffs against the Western Builders and Veazie & Gaynor for $349.55, and in favor of the defendant Morgan, Veazie & Gaynor have appealed.

Complaint is made that the evidence not only fails to show the liability of Veazie & Gaynor, but affirmatively shows that they are not liable. The suit is one for a balance alleged to be due on a plumbing bill for some plumbing done on a house owned by Morgan. The evidence shows that the contract for erecting the building was made between the owner and the Western Builders; that Veazie & Gaynor were employed by the Western Builders to supervise the building of said house at an agreed commission of 7½ per cent. of the cost. J. B. Beach, one of the plaintiffs, testified that he had a transaction with Veazie & Gaynor and the Western Builders about April 17, 1920, with reference to doing some plumbing work on the Morgan house, and had a contract with Veazie & Gaynor and the Western Builders to do such work. He testified:

"I had that contract with Mr. Veazie personally. I don't know exactly what connection Messrs. Veazie & Gaynor had with the work on Mr. Morgan's house, but they were the contractors or overseers, and they looked after the interests of the Western Builders. This property was owned by Mr. Morgan, and a house was being erected at 3244 College avenue. It must have been about five or six days or maybe a week later when the work was begun. In this transaction I dealt with Mr. Veazie. Mr. Veazie gave me a contract to go out there and install some plumbing work in this house. I followed the plans and specifications in figuring on the work, and I wrote a bid specifying what I would do, and I delivered this bid to Mr. Veazie. * * * I followed the plans and specifications as to the plumbing and made my bid in accordance therewith. Mr. Veazie furnished those plans and specifications. * * * Mr. Veazie called me and told me the job was ready to be installed, and I done it. The statement which I have in my hand is the statement which I presented to Messrs. Veazie & Gaynor and the Western Builders. I have presented that statement to them on several different occasions. * * * I conferred with Mr. Veazie and Mr. Whitley of the Western Builders with reference to this change. Mr. Whitley was president of the Western Builders. * * * I presented the bill to Mr. Veazie, and Mr. Veazie took me to the office of the Western Builders and presented the bill to Mr. Whitley. Mr. Veazie took me in there to the Western Builders and said he would see if he couldn't get some money, and I went in there."

On cross-examination he testified in part as follows:

"The plans and specifications which were submitted to me, I could not say that they showed to be made by the Western Builders. I examined the plans and specifications at the time. I couldn't say whether they had any statement on them that it was for the Western Builders. Mr. Veazie brought it over to me, but I couldn't say whether Mr. Veazie is an employee of the Western Builders. When Mr. Veazie took me into the office of the Western Builders to get this payment, I knew that the Western Builders were the party or parties who were supposed to pay, and I was looking to the Western Builders for my pay or money. I stated that I received $225 from them on the payment on this job, and the other check was not paid. As to whether I was not looking to Mr. Veazie for the payment on this job, I will state that I was looking to him for the payment of the job, certainly. As to whether they were designated as contractors in the specifications and I was looking to them for this money, I will state that I got the first payment from Veazie & Gaynor in the form of a personal check. I don't know who that was for, whether for the Western Builders or not, but it was a check that Messrs. Veazie & Gaynor issued to me. I said I was looking to the Western Builders for my money, and I made the statement at one time to Mr. Veazie when certain changes were made out there that I would make those changes according to the orders of the people from whom I was expecting my money. Mr. Veazie stated to me that the Western Builders would pay me. Mr. Veazie and Mr. Gaynor were the contractors or subcontractors, I couldn't say which;

they conducted the company—you might say looked after the work of the Western Builders. * * *

"As to whether on the day that Mr. Veazie paid me this $225 with his personal check he did that for my own convenience, and that I knew at the time he had to draw from the Western Builders money with which to pay off these various items of labor, etc., I will state that he said to me he would have to get some money from the Western Builders to make the check good. * * *

"I did go back to Veazie & Gaynor and try to collect this account after this job was completed, and they told me to go to the Western Builders, and one of them went with me a couple of times to see them about making arrangements for this bill to be paid. That was at the time I got this check, and it was at other times that I tried to get payments on this account. I couldn't say that I knew that Veazie & Gaynor were merely working on this job for the Western Builders as their employees. I knew they were contractors in some way, as contractors on the building or work or commission, or something. I didn't know what it was, but they were interested. I was looking to the Western Builders and to Veazie & Gaynor for my pay for work on this job. Veazie & Gaynor were the ones that ordered me to do the work. I knew that the plans and specifications were made for the Western Builders. At the time I told Mr. Veazie I would make the changes for the man to whom I was looking for this money he told me the Western Builders would pay me. He never told me he was personally liable for it."

Mr. Veazie testified that he and his partner were building houses under the employment of the Western Builders, on a commission basis, and that at times they paid those with whom they made contracts for the Western Builders out of their own funds, in order that they might keep track of the cost of the job and know what commission they were entitled to, but that the Western Builders stopped them from doing this after a while; that the Western Builders had their signs on all jobs, and would not allow Veazie & Gaynor to put up their signs at all; that neither he nor his partner owned any stock in the Western Builders; that they were employed to superintend the work; that they were required to get three bids from every plumber, painter, etc., and submit them to the Western Builders, and they would let the job to the lowest bidder on instruct Veazie & Gaynor to do so; that Mr. Beach knew that Veazie & Gaynor got their money from the Western Builders to pay him, because when he would ask for money, they would say, "I will go and see if we can get the money." The account was made out to the "Western Builders, builders, Veazie & Gaynor, contractors, and Mr. C. C. Morgan, owner."

[1] When a contract is made by a known agent for the benefit of a disclosed principal, and the agent does not expressly bind himself, the assumption is that he intends only to bind his principal.

In 1 Mechem on Agency, p. 999, § 1356, it is said:

"When the matter of the personal liability of an agent upon or growing out of contracts made by him for his principal is suggested, the question not infrequently arises: Why should he be liable at all? Naturally and normally it would seem that there is no room for such a liability. And if a person who so assumes to act does so only when he has adequate authority, and if, in acting, he confines himself within the scope of that authority, and makes the contract or does the act, as is ordinarily his duty, only in the name and on the account of his principal, he would incur no personal liability.

"As a matter of fact, however, cases constantly arise wherein some or all of these qualifications have been ignored. Thus it may happen that one person may assume to act as agent for another, when he has in fact no authority from that other so to act. Or it may happen that, though having adequate authority to act, he yet intentionally or unintentionally so acts as not to bind his principal at all, but to pledge his own personal responsibility."

[2] Where the promise is made in the name of a principal who might have authorized it and as his contract, the better opinion is that the agent cannot be held liable upon the contract of warranty or indemnity, even in the case of a written contract, where the assumed relation of agency appears upon the face of it. 1 Mechem on Agency, § 1395, p. 1023; Heard v. Clegg, 144 S. W. 1145.

[3-5] It is evident from the foregoing testimony that plaintiffs knew before they performed the services for which they seek a recovery that the Western Builders were liable therefor, and that appellants were working for the Western Builders in some capacity of agency. There is no pleading or proof to sustain the theory that Veazie & Gaynor practiced any fraud or deceit in the negotiations with the plumbing company, or misrepresented any facts as to their having a principal, or as to their having been authorized to make a contract. Therefore we conclude that the agents are not liable. See Johnson v. Armstrong, 83 Tex. 325, 18 S. W. 594, 29 Am. St. Rep. 648. It is immaterial whether the agent disclosed his character or his principal, if it be actually known at the time to the party with whom he is dealing or if facts surrounding the transaction are sufficient to put the other party upon notice of inquiry of the existence of a principal. In the absence of a plea and proof that the agent bound himself individually as a guarantor or indemnitor, a third person cannot recover against such agent and the principal, too, even though the agent did not disclose his principal at the time of the making of the contract. Where a suit is brought against the agent of an undisclosed principal, and the agent discloses his principal, who is thereupon brought in as a party,

and the plaintiff establishes a case both against the agent and the principal, he must elect which of the two he will ask judgment against. Pittsburgh Plate Glass Co. v. Roquemore, 88 S. W. 449; Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764.

Hence under no circumstances can the judgment below be affirmed.

If Veazie & Gaynor did not disclose their principal, the plaintiff, after discovering who the principal was, would have been forced to an election as to which one of the two he would seek a recovery against. If the principal was disclosed before the work was done, plaintiff would be entitled to recover only against the principal. But we believe that the evidence in this case does disclose that at the time of the contract, or at least before the work was done, plaintiff knew that Veazie & Gaynor were acting as agents for the Western Builders, in which event Veazie & Gaynor would not be liable. For the reasons given, the judgment below is reversed as to the issue between plaintiffs and the appellants here, and judgment here rendered for appellants. The judgment against the Western Builders, not having been appealed from, is left undisturbed.

Reversed and rendered in part; undisturbed in part.

---

⬉⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes